# Dixon *v.* The State.

### *Indictment for Forgery.*

1. *Writing construed, and held subject of forgery; sufficiency of indictment.* A writing, to which the name of a landlord is forged, disclaiming all interest in a patch of cotton raised by the wife of one of his tenants—as, "*I have nothing to do with Veonie Dixon patch cotton; they are welcome to it, and do what they please with it*"—is the subject of forgery in the second degree (Code, § 4340), on proper averment and proof of the fact, that he was such landlord, having an interest or lien; but the words, "*meaning thereby that said R., the landlord, waived his lien on the patch cotton of Veonie Dixon*," are only an *innuendo* and not a sufficient averment of the extrinsic facts.

APPEAL from the Circuit Court of Marengo.

[Dixon v. The State.]

Tried before the Hon. S. H. SPROTT.

Kirge Dixon *alias* Cap. Dixon, was tried October 6, 1886, under an indictment for forgery. The indictment alleged that "Kirge Dixon *alias* Cap. Dixon, falsely and with intent to injure or defraud, did forge a written instrument, as follows : "April 28th, 1885. Dear Sir : I have nothing to do with Veonie Dixon patch cotton, they are welcome to it and do what they please with it. W. W. Robert, and also Mary Ann the same. W. W. Robert," *meaning thereby*, that W. W. Roberts, the landlord, waived his lien on the "patch cotton of one Veonie Dixon," &c.

W. H. Compton, a witness for the State, testified that to the best of his recollection, the appellant, Cap. Dixon, brought the paper set forth in the indictment to witness at his store, about the day of its date ; that Veonie, appellant's wife, and Mary Danzy, were with appellant, and these parties wanted witness to advance to them on their crop. The State then offered in evidence the said paper-writing, after it had been shown to and identified by the witness, Compton. The defendant objected to its introduction, on the following grounds :

1. Because said paper-writing was irrelevant and inadmissible.

2. Because said paper-writing is not one by which a pecuniary demand or obligation purports to be created, and the false making of which with intent to defraud is forgery.

3. Because said paper-writing does not on its face show any writing by which any person could be prejudiced or injured.

4. Because said paper-writing sets up, that W. W. Roberts had nothing to do with "Veonie Dixon patch cotton," which is a variance from the averment set forth in the indictment, as "*meaning thereby*, that W. W. Roberts, the landlord, waived his lien on the patch cotton of one Veonie Dixon."

5. Because the paper-writing, even if falsely made, with intent to injure and defraud, was not and is not such a writing as can be the subject of forgery ; and the averment of the *meaning thereby*, in the indictment, does not change its character and make it such a writing as can be the subject of forgery."

The court overruled the objections of defendant, and he excepted. The court then permitted the State to put said paper-writing in evidence, with the understanding, that other evidence, proving the allegations in the indictment as to extrinsic facts, would be introduced. To this ruling of the court the defendant excepted.

The State then introduced W. W. Roberts, who testified,

[Dixon v. The State.]

in substance, that W. H. Compton showed him the paper-writing soon after the day of its date ; that he did not write or sign said paper or authorize Cap. Dixon or any one else to do so for him ; that Cap. Dixon and his wife, Veonie, and Peter Danzy, and his wife, Mary Ann, lived with him (Roberts) as his tenants during the year 1885, and that Veonie and Mary Ann worked outside patches on shares, one-half the crop to be witness' and the other half theirs.

The testimony for defendant tended to show that Veonie and Mary Ann asked Roberts for a writing authorizing them to trade on their " patch cotton ;" that he consented, but being unable to write himself, told Cap. Dixon to write the permit for him, and that, thereupon, Cap. Dixon wrote the paper-writing offered in evidence, and Veonie handed it to W. H. Compton.

This was substantially all the evidence material to the points reserved. The evidence being closed, the defendant asked the court in writing, to give the following charge : " If the jury believe the evidence, they must find the defendant not guilty." The court refused the charge and the defendant excepted.

McCaa & Woolf, for appellant.—1. The paper-writing should have been excluded. It contained no proposition or promise to pay or to become liable to any one for any money or other thing of value ; it does not import a consideration, and if sued on, would not have to be denied by a sworn plea ; and the averments of extrinsic facts do not make it capable of working an injury.— *Hobbs v. State*, 75 Ala. 1 ; *Rembert v. State*, 53 Ala. 367. 2. The charge asked by appellant should have been given. Veonie Dixon was a married woman and could not contract. If the writing was not void, it was a contract with a married woman and not the subject of forgery.—2 East. Crim. Law, 953–4. 3. There was no evidence tending to show that Roberts had any lien on the " patch cotton " of Veonie. A married woman, living with her husband on rented land, can not be a tenant ; the possession is the husband's alone.

T. N. McClellan, Attorney-General, for the State.

STONE, C. J.—The testimony in this record tends to prove that W. W. Roberts, during the year 1885, was landlord, and Kirge, *alias* Cap. Dixon, was his tenant, living on his lands; that Veonie or Vionio Dixon, wife of Kirge, lived with him ; that under an agreement with Roberts, Veonie was cultivating a patch on his lands, she to have one-half

the crop, and he, Roberts, the other half. Such was the state of facts, when on April 28, 1885, the instrument in writing was drawn and uttered, which the indictment charges was a forgery. The defendant admitted the writing of the paper, but contended he had authority therefor from Roberts, whose act it purported to be. The jury, by their verdict, negatived the authority claimed.

It is contended for appellant that the writing set forth in the indictment is not such an instrument as can be the subject of forgery. Bishop, 1 Crim. Law, Seventh Ed. § 523, says : " Forgery at the common law is the false making, or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." The principle thus stated by him is supported by many able authorities collected in the note; and Wharton, 1 Criminal Law, § 680, et s q., fully sustains him. See, also, Rembert v. State, 53 Ala. 467 ; Hobbs v. State, 75 Ala. 1. It can not be denied that the instrument set forth in the indictment in this case, would, if genuine, be of apparent legal efficacy—efficacious, as an authority to unincumber or dispose of the entire " patch cotton " to which it refers.

It is objected that Vionie and Mary Ann, whose " patch-cotton " is mentioned in the writing, were married women who could make no binding contracts, and that, under the proof in the cause, the writing was for that reason, worthless, inoperative, and void ; and inasmuch as forgery can not be predicated on a void instrument, the general charge asked by defendant ought to have been given. To this it may be answered that it does not appear that said " patch-cotton " was the property of the wives. As a rule, the earnings of the wife are the property of the husband. Moreover, if the crop was the separate property of the wife, she and her husband could dispose of it by absolute sale.— Waller v. Booker, (in MSS.) present term ; Linam v. Reeves, 68 Ala. 89 ; Blythe v. Dargin, Ib. 370 ; Falk v. Hecht, 75 Ala. 293.

Section 4340 of the Code of 1876, omitting clauses and words not pertinent to this case, reads as follows : " Any person who, with intent to injure or defraud, falsely makes, . . forges, counterfeits . . any . . instrument, being or purporting to be the act of another, by which any right or interest in property is . . in any way changed or affected, . . the forgery of which does not constitute forgery in the first degree under section 4332 of this Code, . . . must on conviction be adjudged guilty of forgery in the second degree." If the said Roberts was landlord, and if the " patch-cotton " referred to in the writing was grown on land rented from

him, he having a part interest in, or lien on the crop as landlord, then the paper was such an instrument as changed or affected the interest of said W. W. Roberts in such crop. The instrument could be the subject of forgery in the second degree.

The instrument or paper, the subject of the forgery charged in this case, does not, by anything it asserts, indicate that Roberts, whose name is alleged to have been forged, had any interest whatever in the "patch-cotton" mentioned therein. Hence, on the face of the instrument, it does not appear that any right or interest in property is, or purports to be affected. To authorize an indictment for forgery, "the instrument must either appear on its face to be, or be in fact one, which, if true, would possess some legal validity; or, in other words, must be legally capable of effecting a fraud." There being nothing in the paper, as we have shown, to indicate that Roberts was in any way connected in interest with the "patch-cotton," it required the averment of an extrinsic fact—the fact that he was landlord having an interest or lien – to show that his property interest was, or would be affected. "If a writing is so incomplete in form as to leave an apparent uncertainty in law, whether it is valid or not, a simple charge of forging it fraudulently, etc., does not show an offense; but the indictment must set out such extrinsic facts as will enable the court to see, that, if it were genuine, it would be valid."—2 Bish. Cr. Law, 7th Ed., § 545; *State v. Humphries*, 10 Hump. 442.

Is is contended in this case that the words, "meaning thereby that W. W. Roberts, the landlord, waived his lien on the "patch-cotton," found in the indictment, is an averment that he, the said Roberts, was the landlord of the said Veonie Dixon, and thus amounts to the averment of the necessary extrinsic fact. That phrase, in the present indictment, is only an innuendo, whose office is not to supply omitted words, but to give point and direction to ambiguous language. "It can not enlarge and point the effect of language beyond its natural and common meaning in its usual acceptation, unless connected with proper introductory averments."—Bouv. Law Dict. There is nothing in the case of *Rembert v. The State, supra*, that helps the present indictment, for in that case this court said the dollar mark, or word dollars, would be supplied by intendment, if suit were brought on the instrument as a note. It was added that, in such suit, it would be interpreted as a promise to pay the bearer the sum expressed, unless its ownership or execution was denied by sworn plea.

The Code furnishes no form of indictment for the offense

[Matthews v. The State.]

attempted to be charged in this case, and the language employed is insufficient to uphold the conviction.—*Smith v. The State*, 63 Ala. 55.

Reversed and remanded.