# Murphy v. The State.

## Indictment for Forgery.

1. *Forgery; when fraudulently altering a decree of divorce is forgery in the third degree.*—The fraudulently altering the names and dates in a copy of a decree of divorce, with the intent to deceive and defraud a woman into the belief that she was divorced from her husband, and free to marry, and whereby said decree on its face appears to be a complete decree of divorce of said woman from her husband, constitutes forgery at common law; and is, therefore, forgery in the third degree, under the provisions of the statutes of this State (Code of 1896, §4726).

2. *Same; admissibility in evidence of forged decree.*—On a trial under an indictment for forgery, where the instrument alleged to have been forged was a decree of divorce, whereby the woman, subsequently married to the defendant, was induced to believe herself legally divorced from her former husband, the forged instrument, appearing on its face to be a complete decree of divorce of said woman from her husband, and purporting to have been signed by the chancellor of the district, is admissible in evidence.

3. *Same; admissibility of evidence.*—In such a case, when the register in chancery has testified that the original copy of divorce, which was fraudulently altered as to its names and dates, was granted in another case pending in the Chancery Court, it is permissible to ask the register what the original copy of divorce, before it was changed, purported to be, and the answer of the witness that it purported to be a copy of a decree of divorce in the case in which it was rendered, is admissible; such answer by the witness being the statement of a collective fact and not the expression of the witness.

4. *Same; same.*—Where, on a trial under an indictment for forgery, the instrument alleged to have been forged was a decree of divorce granted to the woman who was subsequently

[Murphy v. The State.]

married to the defendant, and which was alleged to have been altered by the defendant, for the purpose of deceiving and defrauding said woman into the belief that she was legally divorced from her former husband, and where the said woman as a witness detailed the facts of her declining to marry defendant because she had a husband living, of his offering to procure her a divorce, of his subsequently returning with the document alleged to have been forged, purporting to be a legal decree of divorce, and of the marriage with the defendant which she was induced to enter into by said fraud, it is permissible to ask said witness under what circumstances the defendant brought the paper to her, and her answer that it was to divorce her, is admissible in evidence.

5. *Evidence; error without injury in the admission of evidence will not warrant a reversal.*—Under the provisions of the statute (Code of 1896, § 4333), that a conviction in a criminal case must not be reversed for error, when the court is satisfied that no injury resulted therefrom to the defendant, this court will not reverse a conviction for forgery for error in excluding questionable evidence that the person upon whom the forgery was practiced was not deceived by the forgery, when there is other undisputed evidence in the case that fraud was practiced upon said person, and she was deceived by the forgery.

APPEAL from the Circuit Court of Lee.

Tried before the HON. J. M. CARMICHAEL.

The appellant, John F. Murphy, was indicted and tried for forgery, and was convicted of forgery in the third degree.

The instrument alleged to be forged was a decree of the Chancery Court of Russell county, granting a divorce to M. V. Askew in the case of M. V. Askew v. Thomas Askew. The facts of the case are sufficiently stated in the opinion.

BARNES & DUKE, for appellant.—The defendant, if guilty of forgery at all, would have been guilty of forgery at common law.—*Dixon v. State,* 81 Ala. 61; *Rembert v. State,* 53 Ala. 467; *Hobbs v. State,* 75 Ala. 1.

The court erred in its ruling as to the testimony of the register in chancery as to what the original of the forged instrument purported to be.—3 Brick. Dig., 436, § § 436, 437; *Talladega Ins. Co. v. Peacock,* 67 Ala. 253; *Hames v. Brownlee,* 63 Ala. 277; *Cummins v. State,*

58 Ala. 387; *Smith v. State,* 55 Ala. 1; *Baker v. Trotter,* 73 Ala. 277.

The evidence of the witness, M. V. Askew, that the forged instrument purported to divorce her, was inadmissible.—*Whizenant v. State,* 71 Ala. 383.

WILLIAM C. FITTS, Attorney-General, for the State, cited *Ex parte Finley,* 66 Cal. 262.

HARALSON, J.—It is not disputed by counsel for defendant that the paper alleged to have been forged is not within the statutory definition of forgery in the first or second degree, and that if any offense was committed, it is forgery in the third degree, under section 4726 of the Code of 1896. The contention is, that to be forgery under this section, it must be forgery at common law, and that defendant cannot be found guilty thereof under the evidence. This court has approved as comprehensive and precise the definition of forgery given by Mr. Bishop: "Forgery is the false making, or materially altering, with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability."—2 Bish. Cr. Law, § 495. "The principal point of consideration is," the author observes, "that the instrument must either appear on its face to be, or be in fact, one which, if true, would possess some legal validity; or, in other words must be legally capable of effecting a fraud."—*Ib.* § 503; *Rembert v. The State,* 53 Ala. 467; *Dixon v. The State,* 81 Ala. 61.

In this case, as the evidence tends to show, the defendant desired to marry M. V. Askew, a married woman, who told him she was already married, and the wife of Thomas Askew, but that there was then pending a suit for divorce between her husband and herself in Lee county, and that as soon as she was divorced from him, she would marry him; that he told her he could get a divorce for her in Russell county, in 30 or 40 days, and some time afterwards, the defendant gave her the paper set out in the indictment and bill of exceptions, purporting to be a divorce granted in her favor in Russell county chancery court, and told her it was her divorce, and thereupon she married him. It also tended to show that no such case as that

of *M. V. Askew v. Thomas Askew,* in which said divorce purported to be granted, existed at any time in said chancery court; that there had been a divorce suit in that court, of *John W. Hodge v. Emma Hodge,* and that a decree of divorce had been rendered in that case, which was partly printed and partly written; that the paper offered in evidence was a copy of the decree in that case, and that the written parts which are italicized or underlined, were in the handwriting of the register of said court, except the words "M. V. Askew v. Thomas Askew," whenever they occur, and the figure *4* in 1894, which words and figure had been changed by some other person than the register; that the names of John W. Hodge and Emma Hodge, as they were originally written and appeared in said paper, had been since partially erased and the names of M. V. Askew and Thomas Askew written in lieu thereof. The evidence also without conflict showed that defendant changed the paper in this respect and in the matter of the year of its date, and that the paper offered in evidence was the paper that had been so changed.

It thus appears that the defendant made and uttered the paper alleged to have been forged; that he did it with the intent to deceive and defraud said M. V. Askew, and that he did deceive and defraud her thereby into contracting marriage with him, while she was yet the wife of another man. Moreover, it needs no argument to show that the paper was such, as if it had been genuine, appeared to be of legal efficacy. On its face it was as complete a decree of divorce of said M. V. Askew from her husband, as could well have been written, and purported to have been duly signed by the chancellor of the district. There was no error, therefore, in admitting said paper in evidence, and in refusing the general charge for the defendant.

When the register had testified to the original copy of the divorce that had been granted in the case of *Hodge v. Hodge,* and the alteration of the same, as above stated, the solicitor asked him: "When it was written John W. Hodge v. Emma Hodge, what did the paper purport to be?" and he answered: "It purported to be a copy of the decree in the case." To this

question the defendant objected, as being illegal and irrelevant, and calling for the opinion of the witness. This was the statement, at most, by the witness, of a collective fact on which the defendant could have crossed him, if he desired.

Nor was there error in allowing the witness, M. V. Askew, to answer the question, "Under what circumstances did he (the defendant) bring the paper to you?" She answered, "It was to divorce me." She had already detailed the facts of the marriage she was induced by his fraud to enter into with defendant; that he left her, when she declined to marry him on the ground that she had a living husband, stating that he could procure for her in 30 or 40 days in Russell county a divorce from her husband; and that he returned, afterwards, with the document purporting to be a legal divorce. It was competent, therefore, for the State to ask, and for her to answer, the question propounded to her. It was not calling for his uncommunicated intentions, but for his declared purpose and intention.

It appears the marriage took place in the Fall of 1894. M. V. Askew testified that she and defendant lived together thereafter as husband and wife, about eleven months, and she was advised by lawyers that they could not live longer together without subjecting themselves to prosecution and she thereafter separated from defendant and swore out a warrant against him; that he immediately left, and she did not know where he was for two years, when he was arrested and brought up for trial. The warrant sworn out was for forgery, and bears date, the 31st January, 1896, and was executed April 1st, 1898.

The defendant offered two letters purporting to have been written by said M. V. Askew to defendant, each dated October 10, 1895, in which she addressed him as her husband, and in one of which she tells him of what the lawyers had advised about their living together before a divorce was procured from her husband, and that thereafter they should marry again. In the other she tells him that his letter to her—to use her own expression—put her to her "trumps;" that he had said he would get that divorce, when he saw further, and she thought he had seen far enough; that if he desired

to live with her, he could get up the money by the last
of the week, and start the matter, and told him not to
come over any more, but get the money to start the di-
vorce suit.   It is manifest she was referring to the di-
vorce between her and her husband.   When these let-
ters were offered, the witness was asked if she wrote
them, and an objection to the proof, raised by the State,
was sustained.   The purpose for which these letters
were offered is not disclosed in the transcript.   Coun-
sel for defendant in their brief say: "The State had
previously offered some evidence by the same witness
tending to show that defendant had run away, and that
not even the witness, his supposed wife, was cognizant
of his whereabouts.   The purpose of the letters was
to show that she did know his whereabouts; and it was
further to show, or to tend to show, by expressions
therein contained, that he had not deceived her by the
alleged forgery."   It may be replied, that these letters
indicate that they were written about the time said
witness was notified by her counsel that her marriage
with defendant was illegal, and that she and he would
be prosecuted if they continued to live together,—for,
in one of them, she so states to him, and tells him not to
return; that his absence at this time was not an escape
for fear of prosecution but that he ran away after this,
and it was afer that time, that the witness states she
had not known for two years, and until he was arrested,
where he was.   She swore out the warrant against him,
on January 31, 1896, and he was not arrested until
April 1, 1898.   It thus appears, she may not have been
guilty of any contradictory statement.   W. F. Conner
testified, that he was the father of M. V. Askew; that
as soon as the warrant was issued,—which was, as we
have seen, in January, 1896, more than three months
after said letters were written on the 10th of October,
1895,—defendant left the community, and witness did
not know where he had gone.   He also testified, that
defendant admitted to him that he had changed the
copy of the decree in the case of *Hodge v. Hodge,* so as
to make it appear to be a decree of divorce in *Askew v.
Askew,* and that the paper so changed was the one
offered in evidence.   The evidence of this witness is
nowhere contradicted.   The witness, M. V. Askew, as

[Phœnix Carpet Co. v. The State.]

has been seen, testified fully to the deceit and fraud the defendant had practiced on her by means of this paper, and thereby induced her to enter into said illegal marriage with him. Waiving any further consideration of the supposed error in the exclusion of this evidence, we are satisfied if any error occurred, no injury resulted therefrom to the defendant.—Code of 1896, § 4333.

Affirmed.