Statement of the case.

LOUIS FRANCE v. STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Forgery.* *Code* 1892, § 1106.

   Under Code 1892, § 1106, defining forgery, a duly addressed and signed instrument of writing in these words: "Dear Sir—Louis France comes to me for a note to you, he are living on my place and worked a tract this year and he don't owe me anything, and he is alright and he has a good crop, you can depend on him," is one of which forgery is predicable.

2. SAME. *Extrinsic facts.* *Indictment.*

   Where intrinsic facts are necessary to be known and considered along with the writing in order to constitute forgery, an indictment therefor must set out such facts as well as the instrument itself.

3. SAME. *Landlord and tenant.* *Lien.* *Waiver.*

   Where a forged instrument amounting to a waiver of the landlord's lien does not show on its face the fact of tenancy or the existence of the lien, the indictment must allege such extraneous facts.

FROM the circuit court of Claiborne county.

HON. GEORGE ANDERSON, Judge.

France, appellant, was indicted, tried and convicted of forgery, and appealed to the supreme court.

The indictment, leaving off the formal parts, is as follows: "That Louis France, late of the county aforesaid, on the 14th day of January, 1903, with force and arms, at the county aforesaid, did then and there wittingly, falsely and feloniously make and forge the name of one J. M. Flowers to a certain writing on paper purporting to be an order or recommendation to A. A. Tichte, doing business in Port Gibson, said state, of the tenor following: 'Port Gibson, Miss., August 7, 1902, Mr. A.A. Tichte. Dear Sir: Louis France comes to me for a note to you, he, are living on my place and worked a tract this year and he don't owe me any thing, and he is alright and he has a good crop you can

depend on him.   J. M. Flowers'—with intent to defraud and
injure the said Tichte, and against the peace and dignity of the
state of Mississippi."   A demurrer was interposed to this in-
dictment on the grounds that it does not charge any offense;
does not show an instrument, such as is embraced in the descrip-
tion of those which may constitute forgery; does not give with
certainty the name and description of the thing alleged to be
forged.   The demurrer was overruled.

*J. McC. Martin,* for appellant.

Appellant did not write the letter in his own name, under
the pretense that it is the act of another who bears the same
name as himself.   Appellant did not seek by the writing to
create any pecuniary obligation, because, on its face, the docu-
ment is nothing but a letter stating that Lewis came to the writer,
J. M. Flowers, for a note to A. A. Titche; that Lewis lives on
Flowers' place and worked there; that he does not owe Flowers
anything; that he is all right, has a good crop, and that Titche
can depend on him.   How does this create any pecuniary obli-
gation?   Appellant did not seek by the writing to increase, dis-
charge, defeat or diminish any pecuniary obligation, right or
interest, or to transfer or affect any property whatever.

The indictment does not fall under any of the sections of the
code.

Indictments for forgery at common law were limited; forgery
at common law is a misdemeanor.   Hence, the indictment under
consideration cannot fall within the common law, because it
charges a felony, and the punishment inflicted by the court is
for felony, and not a misdemeanor.

"It is an indispensable element in the crime of forgery, that
the forged paper be such that if genuine it may injure some
person."   *State* v. *Biggs,* 34 Vt., 501.

."A mere request from one person to let another have goods,
without further request that they will be charged to some par-
ticular person, does not, on its face, impose an obligation; and

it is not the subject of forgery unless extrinsic facts are adduced to show that it would in fact create an obligation." *Crawford* v. *State,* 50 S. W. Rep., 378.

"A paper affirming that certain persons are solvent and able to pay a note to which their names appear as makers, it being merely a written expression of opinion, is held not to be the subject of forgery, in case of *State* v. *Givens,* 5 Ala., 747." So "a false letter purporting to have been written by another person with intent to inufluence the collector of customs to reject an application of a Chinese subject to be permitted to land" in case of *People* v. *Wong Sam,* 117 Cal., 29, is held not to be subject of forgery.

Again, "To constitute the offense there must also be a capacity to injure; it is not an indictable offense to utter paper which could in no case be the subject of suit." *State* v. *Anderson,* 30 La. Ann., 557; *Anderson* v. *State,* 20 Tex. App., 598.

The paper, then, on which the indictment herein is based, and the evidence offered by the state, all fail to show a case of forgery. If the paper had in fact been a genuine one, how could it have operated to injure Titche? At best it was but an expression of opinion, or an indirect recommendation.

*J. N. Flowers,* assistant attorney general, for appellee.

If the indictment is good either at common law or under the statute it stands, even though it was meant to draw it on a statute. Bishop on Statutory Crimes (3d ed.), sec. 164.

If the indictment in the case at bar is good without reference to any statute defining forgery, then the appellant was properly sentenced as for a felony, although the crime he was convicted of is a misdemeanor at the common law. Section 1119 of the code fixes the penalty for every forgery, and this includes the common law as well as out statutory forgeries.

It is well settled that an instrument falsely made need not actually do any harm nor be capable of inevitably doing harm. It is sufficient if it is an instrument capable of doing harm. In

*Fondville* v. *State,* 17 Tex. App., it was said that a writing which tends to create or defeat an obligation may be forgery.

It is plain at a glance that the note charged to have been forged would have been, if true, capable of creating or affecting legal obligations. It not only purports to recommend Louis France to Mr. Titche as being "all right" and worthy of confidence, but also advises him that Louis is working on his place "this year, and he don't owe me anything, and has a good crop." Under our laws the landlord has a lien on the crop of his tenant for everything furnished by way of supplies. This note, if true, would have operated as a waiver of this lien in favor of Mr. Titche, and if Mr. Titche had become Louis' creditor, and had tried to enforce a lien on his crop, Mr. Flowers could not have asserted his landlord's lien for advancements made prior to the date of this note, if the note had not been genuine. The note is more than a recommendation. It contains statements of important facts. It might create a waiver and estoppel, and it might have subjected the writer to a claim for damages if Mr. Titche had acted upon the faith of the statements contained in it, and had been damaged by them. An instrument not so dangerous as this was held to be the subject of forgery in *Dickson* v. *State,* 81 Ala., 61. It was as follows: "I have nothing to do with the Veonie Dickson patch cotton; they are welcome to it, and do what they please with it. W. W. Robert and also Mary Ann the same." That instrument, like the one in the case at bar, purported to state existing facts which, if acted upon by the person to whom the writing was addressed, would cause damage to him. And in both cases the notes, if true, would have defeated rights or created obligations for the persons whose names were signed thereto.

WHITFIELD, C. J., delivered the opinion of the court.

The indictment cannot be sustained on § 1112, Code 1892, upon which it was drawn. That section has no application to the state of case developed by the testimony. The writing set

out in the indictment is, however, a paper, such in its nature that forgery can be predicated of it. It is such a paper as that, if genuine, the right of Flowers might be affected thereby. Section 1106, *Id.,* omitting the clauses and words not pertinent to this case, reads as follows: "Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any writing . . . being or purporting to be the act of another, . . . by which any right . . . whatever shall be or purport to be . . . in any manner affected, by which false making," etc., "any person may be affected or in any way injured in his person or property, shall be guilty of forgery." If Flowers was in fact the landlord of France, and did in truth have a lien on his crop as landlord, undoubtedly the writing was such a one as affected Flowers' interest as landlord in such crop. The writing, therefore, is one of which forgery is predicable. But the writing does not on its face disclose the necessary facts. It does not show that Flowers was such landlord, and had such lien as landlord. These extrinsic facts, necessary to be set out in the indictment, do not appear therein. It is essential that they should be stated in the indictment, in order that the indictment setting out both the instrument and extrinsic facts shall so charge forgery as not to be demurrable. The case of *Dixon* v. *The State,* 81 Ala., 61, 1 South., 69, is identical with this case in all its facts. There the paper set forth in the indictment was in these words: "I have nothing to do with Veonie Dixon patch cotton; they are welcome to it, and do what they please with it." The indictment set out this instrument, which was signed by W. W. Roberts, and then added by way of innuendo, "Meaning thereby that said Roberts, the landlord, waived his lien on the patch of Veonie Dixon." Touching this indictment the court said: "Section 4340 of the code of 1876, omitting clauses and words not pertinent to this case, reads as follows: 'Any person who, with intent to injure or defraud, falsely makes, . . . forges, counterfeits . . . any . . . instrument, being or purporting to be the act of another, by which any right or interest

in property is  .  .  .  in any way changed or affected,  .  .  .
the forgery of which does not constitute forgery in the first de-
gree under § 4332 of this code,  .  .  .  must on conviction be
adjudged guilty of forgery in the second degree.' If said
Roberts was landlord, and if the 'patch cotton' referred to in the
writing was grown on land rented from him, he having a part
interest in or lien on the crop as landlord, then the paper was
such an instrument as changed or affected the interest of said
W. W. Roberts in such crop. The instrument could be the sub-
ject of forgery in the second degree. The instrument or paper,
the subject of the forgery charged in this case, does not, by any-
thing it asserts, indicate that Roberts, whose name is alleged to
have been forged, had any interest whatever in the 'patch cotton'
mentioned therein. Hence, on the face of the instrument, it
does not appear that any right or interest in property is, or pur-
ports to be, affected. To authorize an indictment for forgery,
'the instrument must either appear on its face to be or be in fact
one which, if true, would possess some legal validity; or, in
other words, must be legally capable of effecting a fraud.' There
being nothing in the paper, as we have shown, to intimate that
Roberts was in any way connected in interest with the 'patch
cotton,' it required the averment of an extrinsic fact—the fact
that he was landlord having an interest or lien—to show that his
property interest was or would be affected. 'If a writing is so
incomplete in form as to leave an apparent uncertainty in law
whether it is valid or not, a simple charge of forging it fraudu-
lently, etc., does not show an offense; but the indictment must
set out such extrinsic facts as will enable the court to see that,
if it were genuine, it would be valid.' 2 Bish. Cr. Law (7th
ed.), sec. 545; *State* v. *Humphreys,* 10 Hum., 442. It is con-
tended in this case that the words 'meaning thereby that W. W.
Roberts, the landlord, waived his lien on the patch cotton,' found
in the indictment, is an averment that he, the said Roberts, was
the landlord of the said Veonie Dixon, and thus amounts to the
averment of the necessary extrinsic fact. That phrase, in the

present indictment, is only an innuendo, whose office is not to supply omitted words, but to give point and direction to ambiguous language. 'It cannot enlarge and point the effect of language beyond its natural and common meaning in its usual acceptation, unless connected with proper introductory averments.' Bouv. Law Dict."

*Reversed and remanded.*

