# Dudley, *et al. v.* The State.

## *Forgery.*

(Decided January 22, 1914. Rehearing denied February 5, 1914. 64 South. 534.)

1. *Appeal and Error; Harmless Error; Indictment.*—Under section 7133, Code 1907, the fact that the instruments alleged to have been forged were attached to the indictment by metal fasteners does not constitute reversible error as being invasive of the substantial right of the defendant, since sections 7154 and 7158, Code 1907, not only require that the original indictment be recorded in a book kept for that purpose, but authorize a defendant to be tried upon a certified copy of the same where the original is lost or mutilated.

2. *Forgery; Offenses; Elements.*—The false making of an application for an insurance policy on the life of another constitutes the offense of forgery; the instrument thus uttered being one which could be the subject of forgery, because if accepted, the application might render the insurer liable in case of the death of the insured, and would naturally affect the chances of longevity of the insured.

3. *Same; Documents.*—Where an indictment is found for forgery of an application for insurance on the life of another, the indictment need not set out the manner in which the application might be prejudicial to the insurer and the insured, as that matter sufficiently appears on its face.

4. *Same; Degree.*—The forging of an application for a policy on the life of a third person constitutes forgery in the third degree under section 6916, Code 1907, as it does not fall within the class of forgery denounced by the statutes as of the 1st and 2nd degree.

[Dudley, et al. v. The State.]

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Joe R. Dudley, Jr., and others were convicted of forgery of an application for insurance on the life of a third person and they appeal. Affirmed.

FITTS & LEVA, and PARTRIDGE & HOBBS, for appellant. The attached paper is not a part of the writing which forms by law a part of the indictment.—Sec. 7130, Code 1907; *Wesley v. State,* 52, Ala. 182; *Sparrenberger v. State,* 53 Ala. 481; *Jackson v. State,* 74 Ala. 26; *Pike County v. Hanchey,* 119 Ala. 36; 21 N. W. 746; 5 Bliss 59; 7 Carr 429; 1 Sawyer 156; 2 Sawyer 259; 41 Mass. 229; 6 Colo. 36; 59 S. C. 256; 38 N. J. 366; 15 Ill. 56; 2 Ill. 193; 35 Mo. 389; 113 Mo. 440; 9 Enc. P. & P. 575. It follows from these authorities that the court erred in overruling motion to strike, and also erred in refusing to quash the indictment. The court erred on its rulings on demurrers and the admission of evidence. —*Burden v. State,* 120 Ala. 386; *Murphey v. State,* 108 Ala. 137; *Rembert v. State,* 53 Ala. 469; *Manaway v. State,* 44 Ala. 375; *Hobbs v. State,* 75 Ala. 1; 32 N. E. 356; 151 Mass. 210; 24 Wend. 453; 9 Cowan, 773; 43 Fla. 211; 37 Tex. 591; 55 Am. St. Rep. 191; 21 Cal. 506; 28 L. R. A. 127; 10 Hump. 443; 32 Am. St. Rep. 353; 67 Ill. 92; 122 Mo. 31; 59 Wis. 316; 34 Ia. 218; 132 Mass. 129; 129 Mass. 246; 102 U. S. 108; 77 N. Y. 365; 96 Cal. 141. The defendants were entitled to have the jury instructed that under the evidence there could be no conviction.—Wharton's Crim. Law, 885; Cooley's Brief on Ins. Laws, 411-412-413-416; 104 Fed. 486; *A. G. L. I. Co. v. Mayes,* 61 Ala. 163; *Com. F. I. Co. v. Morris,* 105 Ala. 498, and authorities supra; *Williams v. State,* 90 Ala. 649.

[Dudley, et al. v. The State.]

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The motion to strike and the motion to quash were addressed to the discretion of the trial court.— *Goldsmith v. Pickard,* 27 Ala. 142; *Perry v. Marsh,* 25 Ala. 659; *Davis v. L. & N.,* 108 Ala. 60; *Johnson v. State,* 134 Ala. 54; *Mosely v. State,* 1 Ala. App. 108. The fact that the application was attached to the indictment by metal fasteners did not prejudice the substantial rights of defendant.—Sec. 7133, Code 1907. It is not necessary that each count of the indictment should include "against the peace and dignity, etc., but it is only necessary that the indictment should so conclude.—*McGuire v. State,* 37 Ala. 161; *Harrison v. State,* 144 Ala. 20. The indictment sufficiently charged the offense denounced by section 6910, Code 1907; *Jones v. State,* 50 Ala. 161.

WALKER, P. J.—The appellants were charged with forging an application made in the name of another person for insurance on his life. In three of the counts of the indictment the contents of the instrument alleged to have been forged were disclosed by averring that it "was in words and figures substantially as follows," and then attaching by metal fasteners to the sheet of paper on which the preceding portion of the count was typewritten a printed form of such application, with blank spaces filled in and subscribed in the name of James Walker Bryant. The question of the propriety or sufficiency of this method of setting out the instrument alleged to have been forged was raised successively by a motion to strike, by a motion to quash, and by demurrers to the three counts mentioned. The motions and the demurrers were overruled.

Assuming that there was some impropriety in the method adopted for disclosing the subject of the alleged

forgery, the defect or imperfection was in a matter of form, by reason of which the indictment cannot be held insufficient, nor the trial, judgment, or other proceedings thereon be affected, unless it prejudiced the substantial rights of the defendants on the trial.—Code, § 7133. There is nothing in the record to indicate that the method of averment adopted could have resulted prejudicially to any right of the defendants. Certainly there was nothing for them to complain of in the fact that the indictment undertook to furnish a duplicate in form and appearance of the instrument charged to have been forged. If the indictment itself was to remain the sole evidence of the charge made by the grand jury, there might be some force in a suggestion that the use of a separate attached sheet of paper for the copy of the instrument charged to have been forged made it easier to substitute a copy of another instrument than it would have been if this method had not been adopted. But there is a satutory requirement, a compliance with which removes any probability of the rights of either the prosecution or the defense being prejudiced by a mutilation or alteration of the indictment. The clerk of the court in which an indictment is returned must, within 20 days after the filing of it, and without allowing it to be taken out of his custody or control, record the same, with the indorsement thereon, in a well-bound book, which must be kept in an iron safe or vault, if the office of the clerk is furnished with one.—Code, § 7154. There can be little temptation to tamper with the original indictment when the court, the prosecution, and the defense have access to an authentic record of it, for the safe custody of which special provision is made by statute, and upon a certified copy of which the defendant may be arraigned and tried as upon the original indictment in the event of

the latter being lost, destroyed, or so mutilated as to be illegible.—Code, § 7158.  There is nothing in the record before us to indicate that the indictment under which the prosecution was conducted was not recorded as required by the statute, or that there was any intimation or suggestion that it had been changed in any way after it passed out of the hands of the grand jury. This being the situation, we cannot affirm that the court was not warranted in concluding that the mode adopted in setting out the instrument charged to have been forged did not involve prejudice to any substantial right of the defendants.  The effect of the statute (Code, § 7133) is that it follows from such a conclusion having been warranted that there was no reversible error in overruling the objections to the indictment because of that feature of it.

By demurrers to the several counts of the indictment a question was raised as to the sufficiency of their averments to show that the instrument charged to have been falsely made with intent to injure or defraud was such a one as could be the subject of forgery.  In several of the counts the instrument was set out at length, and on its face it purported to be a formal application of James Walker Bryant to the New York Life Insurance Company for insurance on his life in the sum of $10,000, to be made payable to one of the defendants, who was stated in the application to be a friend and business associate of the applicant.  We think that it is plain that such an instrument may be the subject of forgery under the accepted definitions of that offense. "Falsely making any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery.  It is not necessary that any prejudice should in fact have happened by reason of the fraud.  The capacity of the false and fraudulent writing to work injury is the ma-

[Dudley, et al. v. The State.]

terial question. If the writing has that capacity, the offense is committed."—*Jones v. State,* 50 Ala. 161. In that case it was held that the defendant was properly convicted of forging a writing which purported to be an order or request from a son to a father for money, though, if payment had been made by the father on the order, supposing it to be genuine, his act would have been gratuitous, a mere matter of affection and favor. In the opinion rendered in *Dixon v. State,* 81 Ala. 61, 1 South. 69, the court quoted with approval the following statement of Mr. Bishop: "Forgery at the common law is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." Any false instrument which is legally capable of effecting a fraud may be the subject of a charge of forgery.—*Murphy v. State,* 118 Ala. 137, 23 South. 719; *Burden v. State,* 120 Ala. 388, doubted that the instrument set forth in the indictment in this case would, if genuine, be of apparent legal efficacy, in that its statement of facts material to the risk which the party addressed was asked to incur —for instance, those in reference to the identity, the age, place of residence, and occupation of the person upon whose life insurance was sought—might constitute inducements influencing favorable action by the insurance company on the application. Nor is it to be doubted that such an instrument, on the assumption that it was genuine, was legally capable of effecting a fraud, as the result of the insurance company acting upon the belief in its genuineness might well be the issuance by it to one who had falsely personated another of a policy on the life of a person with whom it had never in fact had any dealing at all, and in favor of a stranger to that person, who, instead of having any

insurable interest in his life, would thereby acquire an interest in his death. In the event of the issuance of a policy so applied for and the subsequent death of the insured without his ever having known of the occurrence—and it may well be supposed that his chances of continuing in life would not be enhanced by the real applicant obtaining the policy—the fact might never come to light that the person upon whose death the amount named in the policy was to be paid never entered into any contract with the insurer. An industry akin to that known as "graveyard insurance" would be stimulated by an authentic announcement of the inability of the courts to discover how such a transaction as the one alleged in the indictment in this case could be the means of perpetrating a fraud on an insurer. The capacity of such a falsely made instrument to operate to the prejudice of the party to whom it was addressed was not destroyed by the fact that under the terms of it the insurance applied for was not to take effect, unless the first premium was paid, and the policy delivered. Its success would consist in its becoming one of the means of inducing the insurance company to consent to issue a policy as applied for, and to deliver it, upon the payment of the appropriate premium, not to the person who was supposed to be obtaining insurance on his own life, but to another who falsely personated him, and by whom the premium would be paid with the purpose of enabling his confederate to collect the amount of the policy in the event of the death of the person who was named as the insured. If the instrument could be made one of the means effective in bringing about such a result, it had capacity to defraud, though the consummation of the fraudulent scheme of which it was a part required the co-operation of other agencies directed to the same end. Its capac-

ity to promote such a scheme at any stage of its progress made the instrument the subject of forgery, though the final success of the fraudulent purpose of its makers was dependent upon the happening of future events which might never come to pass. A writing which falsely purports to be an application by a person for insurance on his own life cannot be regarded as innocuous when it is apparent how it may be made use of in furtherance of a purpose of the fabricator of it to obtain, for the benefit of himself or a confederate, but in the name of the person supposed by the insurer to be the applicant, a policy of insurance on the latter's life, in which the recipient of the policy has no insurable interest. It is not to be supposed that any responsible insurance company would, except as a result of a deception practiced upon it, subject itself to an apparent liability on a contract insuring a life in the continuance of which the person actually dealt with becomes adversely interested by the acquisition of the policy.

The claim is advanced that the writing set out in the indictment in this case belongs to the class of instruments, instances of which are found in the Alabama reports, in reference to which, either because the writing is incomplete, obscure, or unintelligible, or does not appear to have any legal validity, or show that it might have an effect prejudicial to some one other than its maker, it is requisite, in an indictment for the forgery of it, in order to disclose its capacity to work prejudice to another, to aver the existence of extrinsic facts by its connection with which it acquired a meaning and a power to harm.—*Fomby v. State,* 87 Ala. 36, 6 South. 271; *Williams v. State,* 90 Ala. 649, 8 South. 825; *Glenn v. State,* 116 Ala. 483, 23 South. 1. We cannot concur in this view. That writing, as already has been stated,

purports on its face to be an application to a designated insurance company by the person whose name is subscribed to it for insurance on his life, and contains statements of facts material to the risk which the ad-' dresses is asked to incur. It is a definite proposal, for the meaning of which nothing but itself need be looked to. We think what has been said above is sufficient to show how such a false writing by itself could be made use of as a means of inducing the insurance company to take action to its prejudice. Its capacity to injure or defraud, if it should pass as genuine, is as apparent from its import, as disclosed upon its face, as it would have been if the writing had purported to be a genuine order or request to the addressee to pay a stated sum of money or to part with some commodity.

The counsel for the appellants have called to our attention the case of *Commonwealth v. Dunleay*, 157 Mass. 386, 32 N. E. 356, in which it was held that an indictment charging the forgery of an application for insurance was insufficient because of *its* failure to aver the existence of acts disclosing how the instrument mentioned could have been used to the benefit of the defendant or the prejudice of anybody else. The writing which was the subject of the charge made in that case is not set out in the report, and we are not informed of its terms or import further than that it was an application for insurance. If that decision may be understood as affirming that an indictment for the forgery of such an instrument as the one set out in the indictment in the instant case, and alleged to have been falsely made by the defendants, with intent to injure or defraud, requires the averment of other facts to enable the court to discover how it could have been used to the prejudice of any one other than its maker, the conclusion there announced is one in which we cannot con-

[Cheshire v. The State.]

cur.   We think that what already has been said shows that the disclosure by the indictment of such an instrument, alleged to have been falsely made, is enough to apprise the court of the fact that it is such a one as might injure or defraud, if made use of with that intent.

As the instrument set out in the indictment is not one which by statute is made the subject of forgery in either the first or second degrees, the offense charged is forgery in the third degree.—Code, § 6916.

The only rulings of which complaint has been made by the counsel for the appellants are those above discussed.   Other rulings which are presented for review are not such as to merit discussion.   We have discovered no reversible error in the record.

The statement in the judgment appealed from of dates for the beginning and termination of the terms of hard labor to which the defendants were sentenced was surplusage.   That judgment will be corrected here by striking that statement from it.   As thus corrected, it will be affirmed.

Corrected and affirmed.