[Ex Parte Dudley, et al., in re. Dudley, et al. v. The State.]

# *Ex Parte* Dudley, *et al., in re* Dudley, *et al. v.* The State.

## *Forgery.*

(Decided June 30, 1914.   66 South. 91.)

CERTIORARI to Court of Appeals.

Joe R. Dudley and others were convicted for forgery, and on appeal to the Court of Appeals, such judgment was affirmed. They bring petition for certiorari to the Court of Appeals to review and revise the judgment of said court. Writ denied.

For report of this case see 10 Ala. App. 130, 64 South. 534.

PITTS & LEVA, and PARTRIDGE & HOBBS, for appellant. Counsel use the same brief and authorities as will be found set out in the report of this case in 10 Ala. App. 130.

R. C. BRICKELL, Attorney General and W. L. MARTIN, Assistant Attorney General, for the State. Counsel use same brief and authorities as will be found set out in the report of this case in 10 Ala. App. 130.

MAYFIELD, J.—The majority of the court are of opinion that the prayer of the petition should be denied, on the authority of, and for the reasons stated in, the opinion of WALKER, P. J., in the decision of this case in the Court of Appeals.—*Joe R. Dudley, et al. v. State of Alabama,* 10 Ala. App. 130, 64 South. 534. The writer, however, dissents from this conclusion, and submits the following statement of his individual views: Is an ap-

plication for a life insurance policy the subject of for-
gery? This is the main question involved on this ap-
plication for certiorari to the Court of Appeals. The
trial court and the Court of Appeals answered the ques-
tion in the affirmative. The Court of Appeals, per WAL-
KER, P. J., delivered a strong opinion in support of the
conclusion reached by the trial court and the Court of
Appeals; but I am not able to concur in their conclu-
sion.

It is certain that an application for a life insurance
policy is not one of the many writings mentioned in our
statute as being the subject of forgery. If it is the sub-
ject of forgery, it was so under the common law, or it
is embraced within one or the other of the two phrases,
"or other instrument, being or purporting to be the act
of another, by which any right or interest in property
is, or purports to be transferred, conveyed, or in any
way changed or affected," and "any instrument in writ-
ing, being or purporting to be the act of another." Of
course these phrases are susceptible of a construction
broad enough to include the application in question, but
they are each preceded and followed by words which re-
strict their legislative meaning. The doctrine of ejus-
dem generis must be, and has heretofore been, applied to
these phrases. This doctrine restricts and confines gen-
eral terms to the particular kind of things mentioned in
the special terms to which these general terms refer.
The doctrine is that where an enumeration of specified
things is followed by some general word or phrase, such
general word or phrase is to be held to refer to things
of the same kind as those things specified. The general
terms are not to be rejected entirely, but to be restricted
to cases of the same kind as those expressly enumerated.
Like all other rules of construction, it is intended to
carry out, and not to defeat, the legislative intent. With-

out this rule of construction, the last phrase above quoted would include all written instruments of whatever kind or character; whereas, it is certain that such was not the legislative intent. If this phrase in question includes all written instruments, why enumerate any, or why put qualifications upon any of those enumerated?

The phrases above quoted have been in our statutes as they now appear, even as to punctuation, since the Code of 1886, which was a codification of an act of January 27, 1883 (Acts 1882-83, p. 33), and the statute has been repeatedly construed by this court, by restricting the meaning of these general terms; and the statute as thus construed has been repeatedly readopted by the Legislature. This statute, in its present exact form, so far as the particular quoted phrases are concerned, was first construed in the case of *Fomby v. State,* 87 Ala. 36, 6 South. 271. It was there held not to include any or all written instruments, but to be limited to those instruments which purport to create, discharge, or qualify, "pecuniary liability," or which show on their face that another person may be injured thereby. In that case the court said: "The instrument, for forging which the defendant was convicted, is set forth in the indictment in hæc verba. On its face, so far as it can be deciphered, it does not purport to create a pecuniary liability on another, nor does it show that another might be injured by it. It is not apparent, that, if genuine, it would operate as the basis of another person's liability. It is uncertain, and some of the words and characters used are so obscure and unintelligible that its meaning and vicious capacity cannot be ascertained from the writing as set forth in the indictment, nor what effect, if any, it should have. In such case, the extrinsic facts connected with a forged instrument should be averred so that the court may see its capacity to create a liability, or to effect a

fraud. No extrinsic facts are averred, which show or tend to show its vicious capacity, nor is its apparent obscurity explained or removed by innuendo or otherwise."

This same statute was again construed in *Williams' Case,* 90 Ala. 649, 8 South. 825, and held not to embrace all or any written instruments. In that case the written instrument was set out in the indictment, and purported to be a waiver by a landlord of statutory lien on the tenant's crop; but the court held that on its face alone it was not an instrument included in the statute. The opinion in that case was rendered by STONE, C. J., and as the opinion is short, but clear and conclusive, we will here quote it, as follows: "Certain writings—a promissory note, or bill of exchange, for illustration—import on their face the creation of a pecuniary liability. So of many other written instruments, if they import legal validity. That is, if the writing shows on its face, without reference to extrinsic facts, that, if genuine, it creates, discharges, increases, or diminishes a money liability, or transfers or incumbers property, or surrenders or impairs an existing valid claim to or lien on property, then the false making of such written instrument, with intent to defraud, is, without more, forgery, and will justify a conviction of that grave offense. To fall within the rule, however, which dispenses with the averment of extrinsic facts, the writing itself must show that, if genuine, it affects some existing property right, or legal liability; for, otherwise, it fails to show its false making or utterance could defraud any one. There must be both the intention and power to defraud, or the legal offense is not committed. This principle rests on the soundest reason, and the highest authority.—*Dixon v. State,* 81 Ala. 61 [1 South. 69]; 2 Bish. Cr. Law (7th Ed.) § 545.

[Ex Parte Dudley, et al., in re. Dudley, et al. v. The State.]

"The indictment in this case charges that Lewis, whose name it avers was forged, was the landlord of defendant, and, as such, had a lien on the crop grown on the rented premises, for any advances he had made to Jackson, or might make to him. The law creates the lien, if the relation of landlord and tenant existed, and if advances were made.—*Cockburn v. Watkins,* 76 Ala. 484. But, unless advances were made, there was no lien in fact; and a certificate that no claim or lien existed, other than that for land and mule rent, though forged, could not injure or defraud any one, and legal forgery could not be predicated of it. To make the indictment sufficient, it should have averred that Lewis had made advances to Jackson—such advances as the statute declares give him a lien.—Code of 1886, § 3056. The indictment is insufficient, and the demurrer to it should have been sustained."

In the case of *Burden v. State,* 120 Ala. 388, 25 South. 190, 74 Am. St. Rep. 37, the statute was again construed. It appears that on that appeal the Attorney General made the point that the statute expressly made "any instrument or writing being or purporting to be the act of another," the subject of forgery; but the court held otherwise, and followed the rule of construction announced in *Williams' Case, supra.* The opinion in *Burden's Case* was by McClellan, C. J., and he said: "It may be that a writing in the following words, viz.: 'Mr. Holmes, Selma, Ala. Dear Sir: The value of this chain is $10.00 (Ten)'—is the subject of forgery under certain circumstances extrinsic to the paper itself. Even this we do not decide, however, but it is most clear that on its face this writing, by whomsoever signed or purporting to be signed, does not create, discharge, increase, or diminish a money liability, or transfer or incumber property, or release or impair an existing claim to or

lien upon property; and if extrinsic facts exist which, taken in connection with the paper, impart to it a capacity to injure or defraud, they should have been averred in the indictment. No such facts are alleged in this indictment, and therefore neither of its counts charge any offense.—*Rembert v. State,* 53 Ala. 467 [25 Am. Rep. 639]; *Dixon v. State,* 81 Ala. 61 [1 South. 69]; *Williams v. State,* 90 Ala. 649 [8 South. 825].

"The construction put upon the words 'or any instrument or writing, being or purporting to be the act of another,' in section 4720 of the Code, would lead to this, that if a man signed the name of another to a statement that the earth is round, or that the moon is made of green cheese, or other like entirely innocuous assertion, by means of which there is no possibility of any person being injured or defrauded, he would be guilty of forgery. The statute is not open to such interpretation, we think; and we reiterate with respect to the present form of the provision what has been many times declared by this court. A writing to be the subject of forgery must, either upon its face or by reason of attendant circumstances, have upon the assumption of its genuineness a capacity to injure or defraud."

The case relied upon in the trial court was *Murphy v. State,* 118 Ala. 137, 23 South. 719, which held that a decree of divorce was a subject of forgery. This is not conclusive or even persuasive that an application for a life insurance policy is the subject of forgery, for the reason that a judicial record at common law was the subject of forgery, and a decree of divorce is a judicial record. Mr. Bishop's definition of forgery is quoted in the opinion in *Murphy's Case,* 118 Ala. 137-139, 23 South. 719 (as frequently done in this court), and is as follows: "Forgery is the false making, or materially altering, with intent to defraud of any writing which, if genuine, might

apparently be of legal efficacy, or the foundation of a legal liability.—2 Bish. Cr. Law, § 495.   The principal point of construction is:   That the instrument must either appear on its face to be, or be in fact, one which, if true, would possess some legal validity, or, in other words must be legally capable of effecting a fraud."— Id., § 503; *Rembert v. State,* 53 Ala. 467, 25 Am. Rep. 639; *Dixon v. State,* 81 Ala. 61, 1 South. 69.

Mr. Bishop, in speaking of records being the subject of forgery, says:   "If the forging of writings prejudicial to individuals is indictable a fortiori, it may be when prejudicial to many individuals, or the public.   Indeed, this is the kind of common-law forgery mostly spoken of in the older books.   Hawkins mentions as examples: 'Falsely and fraudulently making or altering any matter of record, or any other authentic matter of a public nature; as a parish register,' or 'privy seal, or a license from the Barons of Exchequer to compound a debt, or a certificate of holy orders, or a protection from a parliament man.'   We may add, the entry of a marriage in a register, which, indeed, is substantially one of Hawkins' illustrations.   Therefore the counterfeiting or altering of any judicial process is forgery; as, for instance, a writ.   So forgery may be committed by writing falsely a pretended order, as from a magistrate to a jailer, to discharge a prisoner because of bail having been given." —Cr. Law, § 531, pp. 300, 301.

So as stated in the opinion in *Murphy's Case,* the decree altered in that case was the subject of forgery at common law, and did not need the statute to make it so.

"A false writing directed 'to any railroad superintendent,' stating that 'the bearer has been employed,' etc., and 'any courtesies shown him will be duly appreciated, and reciprocated should opportunity offer,' is not in-

dictable as a forgery, being of no legal validity."—2 Bish. Cr. Law, § 534, p. 302.

The author last cited also says that it is a familiar doctrine, that a mere naked promise, no consideration appearing, creates no liability, and is not the subject of forgery. The writing, to be on its face the subject of forgery, must be such as would, if genuine, be apparently of some legal efficacy. A writing merely affirming that certain persons are solvent and able to pay a note to which their names are attached as makers is not the subject of forgery.—*State v. Givins,* 5 Ala. 747.

Where the instrument on its face is complete, and imposes a liability, and especially one which is mentioned in the statute, it is not necessary that it aver extrinsic facts to show its validity, or that another might be injured by the forgery thereof.—*Shelton's Case,* 143 Ala. 98, 39 South. 377. But where the instrument on its face does not impose, create, discharge, or diminish any liability, nor transfer or incumber property nor release, impair, or affect any existing claim to or lien upon property, the extrinsic facts must be averred which, taken in connection with the instrument, impart to it capacity to injure or defraud; and without such extrinsic facts the instrument is bad on demurrer.—*Burden v. State, supra.*

The application for a life insurance policy, declared on in this case as a subject of forgery, affects no existing property rights, or legal liability, and therefore, on its face, fails to show that the false making or altering of it could defraud any one.—90 Ala. 650, 8 South. 825. The application is what its name imports—a mere request or solicitation for a contract of insurance in accordance with the conditions and specifications mentioned in the policy. It does not, of itself, purport to bind any one to do or not to do anything. It is only in the

event the policy is issued or the contract of insurance made that any of the provisions, stipulations, or conditions of the application become binding. Until the policy is issued, the application is a mere request or solicitation for insurance. Standing alone, the application is not a contract, and by its very terms it is not to be-come binding until the contract of insurance is made; then, and not until then, do any of its provisions, speci fications, or representations become binding on the person making the application.

The exact question was before the Supreme Court of Massashuetts in the case of *Commonwealth v. Dunleay,* 157 Mass. 386, 32 N. E. 356, and the court there said:

"The paper writing which the defendant is alleged to have uttered and published, knowing the same to be 'false, forged, and counterfeit, is not one of those enumerated in Pub. Sts. c. 204, § 1. This statute does not, however, supersede the common law; *Commonwealth v. Ayer,* 3 Cush. [Mass.] 150; *Commonwealth v. Hinds,* 101 Mass. 209, 210; and the principal question in the case is whether the indictment sufficiently sets forth a forgery at common law. In *Commonwealth v. Hinds,* it was said by this court, 'In order to maintain an indict-ment for forgery at common law, it must appear, not only that there has been a false making of a written instrument, for the purpose of fraud or deceit, but also that the forged instrument is of such a description that it might defraud or deceive, if used with that intent,' and that, 'If the fraudulent character of the forged instrument is not manifest on its face, this deficiency should be supplied by such averments as to extrinsic matter as would enable the court judicially to see that it has such a tendency.' See, also, *Commonwealth v. Ray,* 3 Gray [Mass.] 441. In the case at bar, the instrument set forth as forged is an application for a policy of in-

surance. It is not a contract, and does not purport to be one. The use which was intended to be made of it does not appear, nor 'how it could have been used to the benefit of the defendant or the prejudice of anybody else. * * * The mere possibility that it might be used, in some way which can only be surmised, for some undisclosed fraudulent purpose, is not enough to maintain the indictment.'—101 Mass. 210, 211. The indictment, therefore, is insufficient."

That court said that the application was not included within the Massachusetts statute, which statute was quite as broad as ours, and even enumerated an "insurance policy" as one of the subjects of forgery.

The same question was before the Supreme Court of New Hampshire, in the case of *State v. Horan,* 64 N. H. 548, 15 Atl. 20, and that court said: "The indictment charges the defendant with counterfeiting an application for a policy of insurance purporting to be signed by James Jennings. The instrument set out purports to be signed not by James Jennings, but by Kate Kelly, and to be her application for a policy of insurance upon the life of James Jennings. As the name of the applicant in the purport clause of the indictment varies from the name given in the tenor clause, the repugnance is fatal. * * * The indictment is bad also because it does not show on its face that the instrument is one of which forgery can be committed. The statute makes it a crime to counterfeit, among other writings, 'any warrant, order, or request for the payment of money or the delivery of any property or writing of value.'—G. L. c. 276, § 1. The indictment does not allege that the insurance policy requested is either of the writings mentioned in the statute. It should have averred, in formal and appropriate language, that the policy is a writing of value."

Our statutes do not differentiate the case in hand from the two cases just above quoted, and those cases are from courts of the highest standing, and I think are conclusive of the question, against the sufficiency of the indictment in this case.

A case somewhat similar is that of *Shirk v. People,* 121 Ill. 61, 11 N. E. 888. There the defendant was in- dicted for forging a writing, the material parts of which are as follows;

"Harvey F. Perkins'

"Marble and Granite Works, Lena, Ill.

"Adline July 17, '85.

"I have this day bought of H. F. Perkins, marble grave-stone, of the following size (describing it). \* \* \*

"To be delivered and set in Foreston freight office, Ogle Co., Ill., on or about the 5th day of November, 1885, or as soon as convenient thereafter, for which I agree to pay the sum of $165 on delivery of said monu- ment."

The statute of Illinois, enumerating the subjects of forgery, contained the phrase, "other instruments in writing." The court in that case, speaking of the in- strument set out, said: "It is in form a contract in writing for the purchase by Walldecker from Perkins of a marble monument, to be delivered on a future day, and paid for on delivery. By the terms of the instrument it was wholly uncertain whether the money would ever become payable. That depended altogether upon wheth- er the monument was put up and tendered at the time and place specified in the instrument. If the statute was intended to extend to a fictitious contract like this, then it would apply to every executory contract where either of the parties bound himself to the other, though upon a mere contingency, for the payment of money or personal property. This cannot be a proper construc-

[Ex Parte Dudley, et al., in re. Dudley, et al. v. The State.]

tion of the statute. If such was the intention of the Legislature, the language used certainly fails to express it. Contracts like the one under consideration are seldom, if ever, the subject of sale or transfer, like bills, notes, check, etc.; hence it was not thought necessary to protect society from the sale of fictitious contracts which impose a merely contingent obligation to pay money or property. We are clearly of opinion that the indictment under which the defendant was convicted is fatally defective, and that the court therefore erred in overruling defendant's motion to quash it."

The false making of certifications or applications for pensions, bounties, etc., has been held not to be a forgery within the meaning of federal statutes.—*Neall v. United States,* 118 Fed. 699, 56 C. C. A. 31; *United States v. Ah Won* (C. C.) 97 Fed. 494; *United States v. Glasener* (D. C. 81 Fed. 566.

I do not hold that extrinsic facts might not be averred, which together with the application, would constitute its false and fictitious making or utterance forgery; but I hold that on its face, without more, the application is not the subject of forgery, and that no sufficient extrinsic facts are alleged to make the indictment charge the offense of forgery. It may be that the false making and utterance of an application like the one in question may be the first step, or the incipiency, of a great fraud, of procuring a policy on the life of a third party, payable to, or for the use and benefit of, the person falsely making the application, and then killing the insured so as to obtain the insurance; and, if such facts were alleged, the case might show that the person so falsely making or uttering the application was guilty of forgery, but no such facts are alleged in this indictment. There was an attempt in some of the counts to allege extrinsic facts, but no one of the counts contained suffi-

cient allegations to charge the offense of forgery. No one of the counts alleges that an insurance policy was ever issued, and until this was done there was no con-. tract of any kind, and nothing that purported to be a contract. The application on its face does not purport to be a contract; it even excludes the idea of its being a contract—it in terms solicits the making of a contract— and until the contract of insurance is made neither the application nor any of the representations or stipulations therein contained are binding. The application shows on its face that it was never accepted by the insurance company; that is, there appears, as a part of the application, a blank sheet, headed, "Statement. To be Signed by Applicant upon Payment of the Premium or Any Part Thereof." The blanks on this sheet so headed appear never to have been filed in or signed by the applicant or the insurance agent. So the application shows on its face that it never had any binding or legal effect upon any one. It may have been the initial step or act in a great conspiracy to commit a great crime, but, if so, it does not so appear on the face of the application, nor from any extrinsic facts alleged. The mere conclusion that it was made with the intent to defraud and to obtain from the insurance company $10,000, and that the alleged forgers had no insurable interest in the life of the insured, is not sufficient.

Writ denied. All the Justices concur, except MAYFIELD, who dissents.