UNITED STATES (OSBORNE v.). See Case No. 10,599.

## Case No. 15,971a.
### UNITED STATES v. OSGOOD.
[Betts, Scr. Bk. 27.]

Circuit Court, S. D. New York. 1839.

FORGERY OF PENSION PAPERS.

[1. Forgery is the false making of a paper, but it need not be the entire fabrication thereof. Any addition to a genuine paper, or any alteration of it in an essential particular, so as to give it a different meaning, is a forgery.]

[2. Aiding or assisting in forging papers with intent to defraud the government consists in the commission of any act having a tendency to forward or facilitate a forgery committed by another. The degree of aid or assistance is unimportant. To trace a name with a pencil, afterwards filled up with another in ink, or to take measures to prevent surprise or detection while the forgery is being committed would be such an act.]

[3. To forge the name of the magistrate to the jurat of an affidavit is a forgery of the affidavit, within the meaning of the law.]

[This was an indictment for forgery against Walter F. Osgood.]

BETTS, District Judge, stated to the jury, that the act of congress prohibited, under highly penal sanctions, the commission of forgeries for the purpose of defrauding the government of the United States. The indictment charges the prisoner at the bar with having been concerned in the forgery of certain affidavits or paper writings, with intent to defraud the government, or an agent of the government for the payment of pensions. The statute anticipates three various ways in which this offence may be committed, and the indictment charges the prisoner to have violated the act in each of those particulars. The prisoner can only be tried upon the accusations stated in the indictment, and the jury must first ascertain with clearness, what the offences are

upon which he stands arraigned, and by what acts he is accused of having committed them. The offences prohibited by the statute, and designated in the indictment, may be arranged in three classes; each class having its appropriate signification, and modes of proof. The first class is (1) forgery, aiding or assisting in forgery; and causing or procuring to be forged the paper writings set out in the indictment. Forgery is the false making of a paper. This false making need not be the entire fabrication of the paper; any addition to a genuine paper, or any alteration of it in an essential particular, so as to give it a different importance and meaning, is a forgery; and if this change is made for the purpose of defrauding the government, it is a felony, the crime interdicted by the statute. Aiding or assisting in forging consists in the commission of any act having a tendency to forward or facilitate a forgery committing by another. The degree of aid or assistance is unimportant; if what is done is, in any manner, calculated to promote the forgery, the act comes within the statute. To trace a name with a pencil, afterwards filled up with another in ink, would be such an act; so taking measures to prevent surprise or detection, whilst the forgery is actually committing, would be aiding and assisting in its commission. Causing or procuring a forgery to be committed would be the use of any persuasion or influence inducing another to commit it. In several of the first counts of this indictment, these acts are all charged to have been committed by the prisoner, in relation to several papers,—the affidavit of Benjamin C. Dubois; that of Hugh Stephenson, and of Samuel Loyd. These papers would not be perfect or complete, so as to answer the purpose they were prepared for, without being authenticated by the attestation of a magistrate. A simple statement of facts by a party claiming a pension, would be of no avail to him; to render the paper of service, it must be regularly sworn to. The jurat, accordingly, became an essential and vital part of the paper, giving to it that character without which it would not be acted on by the war department. To forge the name of the magistrate, would, therefore, be deemed, in judgment of law, the forgery of the affidavit, so as to support an indictment alleging the forgery, not of the name of the magistrate only, but of the paper itself.

The testimony shows beyond all grounds for doubt, that the name of the recorder appended to the affidavits is forged; the only question upon the evidence requiring deliberation, is, whether it is proved that the act was done by the prisoner; or by his aid or procurement. The proofs offered to establish this fact are circumstantial and direct. The circumstantial evidence consists of the facts that the body of the papers is in the handwriting of Luyster, a clerk in the prisoner's office and employment; that the affidavits were presented by the prisoner to the pension office, and the monies received by him upon them; that at least one of the supposed deponents, Stephenson, had been dead about eight months, and proof is offered to show that this last fact was well known to the prisoner; and that other papers to obtain pensions (proved to be forged, and to have been prepared by the prisoner) were also in part in the handwriting of Luyster. More remote facts, but being also relative to the subject, are also in proof,—that an affidavit in support of the application of one Clarke, proved to be in the handwriting of the prisoner, is forged; that Clarke died in 1826; and that papers in the prisoner's handwriting with the forged attestation of the recorder that he was living, &c., were executed and used in 1833, and that in 1833 the prisoner drew Clarke's pension, $960, in this city on a forged affidavit, at the same time asserting under his own signature, that Clarke did not apply personally for it on account of his age and infirmities. Evidence of a similar character in many features is also offered with respect to the application of Loyd, and the papers prepared and used in his name.

These facts are laid before the jury on the part of the prosecution as a foundation for the inference that the prisoner committed the forgeries laid to his charge, or procured them to be done, or aided and assisted in their perpetration. Circumstances may be so directly and necessarily connected with the conclusion of guilt as to amount to what is called a violent presumption of guilt, and so as to be equally satisfactory with positive proof. That force of evidence might probably be found in circumstances showing beyond doubt that the body of these papers had been prepared by the prisoner, that he had used them as genuine to his own individual benefit, and that he knew the persons whose names were used were fictitious. It would be difficult to suppose a combination of facts of that character without holding them connected with the further one; that the name added to the papers had been forged by him, or at his instance and with his assistance. It belongs to the jury to determine how far the testimony has established facts of that character, and also to decide what intendment must necessarily accompany them.

Although the circumstances in proof may not afford a violent presumption of the guilt of the prisoner, yet they may raise a probable presumption of such guilt. The distinction in law between these two degrees of presumptive evidence is that the latter is such an inference or conclusion as common observation and experience teach us ought ordinarily to be drawn from the facts. If a man attempts to pass a counterfeit bank bill, the filling up of which is in his own handwriting, the probable presump-

tion is that he forged the whole bill, and a jury would be well justified in finding him guilty of the counterfeiting, in the absence of proof on his part showing that he did not commit the offence. If he had passed such bills, and was found with a large quantity of them in his possession, the presumption that he was the counterfeiter would become violent,—would demand his conviction as upon full proofs, unless he could clear himself by countervailing testimony.

After maturely considering the circumstantial evidence before them, and estimating its weight and bearing, if the jury are in doubt whether the offence is proved by it, it will be necessary to bring into consideration the direct proof to this part of the charge. That consists of the testimony of the accomplice, Luyster. The law admits an accomplice to be a competent witness, but it declares it unsafe to convict upon his uncorroborated evidence alone. To corroborate his testimony there must be other proof supporting him in essential parts of his story. The jury will undoubtedly find much evidence of that character in this case, and, considering Luyster's credit affected only by the fact that he was a particeps criminis, there might be enough found probably to justify a good deal of confidence in his statements. The jury, are, however, to bear in mind that the witness has once before given an entirely opposite account, on oath, of the transactions to which he now testifies, and that in the one instance or the other he has committed manifest perjury. It may happen that the most depraved of human beings may so bear himself on his examination as to command the confidence of a court and jury; when he unbosoms himself without reserve, and carries to every judgment a deep conviction that he is honestly attempting the only atonement and expiation for his past offences allowed man in this life,—a confession of his sins, and making all the reparation in his power for the wrongs done by him. Even then the steadier experience of the law admonishes us against yielding to emotion and sympathy, and cautions us that it is safer to abide by well-tried rules of judging, than to proceed upon vague impulses, even though the mind may at the moment be entirely satisfied of the truth of the witness, and clear wrong be done in the individual case by not crediting him. The cardinal rule, which has served in all ages, and been applied to all conditions of men, is that a witness wilfully falsifying the truth in one particular, when upon oath, ought never to be believed upon the strength of his own testimony, whatever he may assert. And further, in respect to this witness, Luyster, the jury will carefully note his manner of testifying, and if they find he prevaricates, denies facts which it is plain he must know, endeavors to make concealments, half disclosing at one moment what he fully discloses at another, it would be unsafe and improvident to rely in the slightest upon his testimony, except in so far as each particular statement is corroborated by other proofs.

The jury will be required to pass also upon the other classes of offences set forth in the indictment: (2) Uttering and publishing as true the three affidavits or papers described. (3) Transmitting or presenting them to the government or an agent thereof. The evidence of uttering or publishing the papers, and of presenting them to an agent of the government as true, is very explicit and uncontradicted. The counsel for the prisoner in no way question these two facts. To convict him, however, of the offence for which he is indicted, the proofs must satisfy the jury that the prisoner knew when he so used the papers that they were forged. All the evidence applicable to the first class of counts also applies to latter classes; and, though the evidence may be insufficient to prove the actual forgery, it may be adequate to establish the scienter, or knowledge of the prisoner that the papers were forged. It is to be examined only, in this point of view, in reference to these counts in the indictment, and the single inquiry referred to the jury on this branch of the subject is whether upon the whole evidence it is proved that the prisoner knew the papers described in the indictment were forgeries, at the time he offered them as genuine.

THE COURT further remarked that it was the right of the jury to separate the charges in their finding, and give a verdict of guilty upon any one of the counts in the indictment, and of not guilty upon all or any of the others. So, also, they may discriminate between the several particulars embraced in any one count or class of counts. Three affidavits are specified in the indictment as the subject of the offence; but the crime is complete, if either affidavit was forged by the prisoner, or uttered and published as true, with a knowledge that it was forged. Should the proofs establish the prisoner's guilt as to any one, and not as to the other particular specifications, the jury may acquit him, in respect to the latter, or return a general verdict of guilty, inasmuch as the crime is the same whether one or all the papers were forged.

It belongs to the prosecution to produce legal evidence proving the guilt of the prisoner. He is to have the advantage of every defect of testimony, and of every reasonable doubt existing upon the proofs; and whatever suspicions the evidence may raise, if it does not make out satisfactorily the criminality of the prisoner in the matter and manner charged in the indictment, he is entitled to a verdict of acquittal.

The jury found the prisoner guilty upon the whole indictment.