JOSEPH A. ROHR, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. Where two joint executors have money of their testator's estate on deposit in bank, which it is agreed shall not be drawn except upon the check of both of the executors, and one of them procures his co-executor to sign checks upon the bank drawn to the order of certain creditors to pay claims against the estate, and after receiving them for the purpose of attaching his own signature and delivering the same to the creditors, adds his own signature thereto as executor, and erases from the body of the checks the names of the payees, and writes therein his own name individually, and draws the money from the bank, and then settles with the several payees at a less sum than their actual demands and applies the difference to his own use, the executor profiting by such acts, if done with intent to defraud, is guilty of the crime of forgery.

2. It can make no difference to the legal character of the offence, whether in point of time such executor makes the forged alterations upon the checks before or after he thus appends his signature thereto as a joint drawer, provided these several acts were but parts of one transaction, done with the common intent to defraud.

3. Since the enactment of section 50 of the Criminal Procedure act (*Gen. Stat.*, p. 1130), it is no longer necessary in cases of forgery, to allege in the indictment or prove on the trial an intent to defraud any particular person; it is sufficient to allege and prove that the forgery was committed with an intent to defraud.

4. It is no defence to a forgery committed by alterations in an instrument, that there was no special attempt to conceal such alterations, and that they were plain to be seen; the rule being, that if a signed writing, which is forged, be intended to be taken as true, and might be so taken by ordinary persons, it is sufficient.

On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch.*

For the state, *Louis Hood.*

The opinion of the court was delivered by

HENDRICKSON, J.   The plaintiff in error was convicted of the crime of forgery in the Essex Quarter Sessions, on

February 14th, 1894. A writ of error was taken by him, removing the conviction to the Supreme Court, where the judgment below was affirmed, and from the latter judgment the plaintiff took a writ of error to this court.

The errors assigned arise upon an exception taken in the Court of Quarter Sessions upon the court's refusal to quash the indictment, and upon exceptions to the charge of the court and its refusal to charge as requested. But the controversy, as presented by counsel of the plaintiff in error, is narrowed down to a single point, and that is, whether the acts alleged to have been committed by the plaintiff in error constitute the crime of forgery.

To understand the merits of this controversy a brief recital of the facts is necessary. The plaintiff in error and one Charles F. Herr were the executors of the estate of Anna Wichman, deceased. They had deposited moneys belonging to the estate in their joint names as such executors, in a banking institution known as the Fidelity Title and Deposit Company at Newark, N. J., and it was agreed that no check drawn upon such account should be valid without the signatures of both of the executors. The proofs show that the estate was indebted, in the following amounts to the following persons, who had filed claims, to wit, to Dr. Glatzmeyer, $54 ; to Daniel Neidenger, $5.78 ; and to J. H. Mersfelder, $11.05. The plaintiff in error drew checks dated June 30th, 1892, to the order of these several parties, upon the bank, for the above amounts respectively due them, and procured the signature thereto of his co-executor. With these checks in his possession, the plaintiff in error on the same day, without the consent or knowledge of his co-executor, erased therefrom the names of the several payees and wrote his own name as payee in each of the three checks and before or after such alteration, whether before or after does not clearly appear, he wrote his own name to the checks as one of said executors above the signature of the co-executor, and having endorsed said checks presented them so signed and altered to the bank and drew therefrom the several amounts named therein. With the

moneys thus in hand, the plaintiff in error, afterwards made a settlement with the original payees of the checks at amounts less than the face of the original claims. The case also shows that the plaintiff in error filed an account as executor of said estate, with the surrogate of Essex county, on December 14th, 1892, in which he craved allowance for the full amounts of these several claims without giving any credit whatever to the estate for the amounts deducted by the claimants on settlement.

It will thus be seen that the plaintiff in error profited by these transactions to the extent of the difference between the amount of the checks as originally drawn and the amount of the payments actually made to the claimants in effecting a settlement with them. Each of these transactions was made the basis of an indictment, and the three indictments were tried together.

The point in controversy comes up for review under an exception to that part of the charge where the trial judge says, " for the purposes of this case I charge the jury that the alteration of the checks made by the defendant, in the manner which has been admitted and proven before this jury in these several cases, amounts to a forgery provided the jurors find, as a matter of fact, the alterations were made with an intent to defraud the payee of the check or the estate of which he was an executor;" and it is further raised on exceptions to the court's refusal to charge the proposition, which was in substance that the state had failed to establish that the defendant had committed any of the offences charged against him in the indictments.

In support of these allegations of error, counsel has insisted that the admitted facts and proofs fail to establish the crime of forgery; that the essential element of fraud of a character such as to amount to a cheat at common law is lacking, and consequently that there could be no legal conviction. His argument in support of this contention was, in brief, that the estate had paid on these checks no more than the original indebtedness; that the funds upon which the checks were drawn

were the joint and separate funds of the executors—each owned the whole at law; that in erasing the names of the payees and substituting in their places the name of the plaintiff in error, there was no attempt made to conceal the erasure, it was plain to anyone who took the trouble to look; that there was no claim that false representations had been made or any deception practiced to induce the payees to take a less sum than was due them; that the estate was not liable to pay any more and did not pay more than was honestly and justly due to the payees of the checks; that it was a matter wholly within the volition of the payees whether to accept a less sum than was due them or not; that it was clear that the plaintiff profited by the transactions and was guilty of a breach of trust in not giving the estate the benefit of the transaction, but that it was impossible to see how any fraud could be inferred from the change of the names of the payees; that the bank could not be defrauded by the transactions; the estate owed the money justly, and it was no fraud on it; and the creditors received the amounts they did in full satisfaction of their claims.

In examining the question thus raised, reference should be had to a familiar precept of criminal law which is that "it is forgery to fraudulently alter any part of an instrument when the alteration is capable of working injury to another. Thus, it is forgery to alter the dates, names or any other material parts of an instrument when the alteration gives it a new operation." 1 *Whart. Cr. L.* 677.

Our own statute, section 235 of the Crimes act (*Gen. Stat.*, p. 1092), makes it a high misdemeanor to falsely make, alter, forge or counterfeit, &c., among the other instruments named, a check, with intent to prejudice, injure, damage or defraud any person or persons, body politic or corporate.

That the checks in question were altered in a material part will not be disputed. Nor will it be contended but that the alterations were falsely made, since the word "falsely" used in such connection implies that the paper or writing so altered is false, not genuine—fictitious, not a true writing, or writing

which is the counterfeit of something which is or has been a
genuine writing, or one which purports to be a genuine writing
when it is not. *State* v. *Young,* 46 *N. H.* 266, cited in
9 *Encycl. of Pl. & Pr., p.* 557. But the material inquiry is,
were the alterations made with intent to defraud as charged
in the indictments?

It may be observed here that the settled doctrine of the
common law is that though the intention to defraud is an
essential to the completion of the offence, yet it is not neces-
sary to show that the prosecutor was actually defrauded. If
the jury can infer from the circumstances that it was the de-
fendant's intention to defraud the party averred, known or
unknown, there being an apparent possibility of fraud, it is
sufficient to satisfy such allegation in the indictment. 1
*Whart. Cr. L.* 713.

And under section 50 of our Criminal Procedure act (*Gen.
Stat., p.* 1130); it is no longer necessary, in cases of forgery,
&c., to allege in the indictment the name of the person in-
tended to be defrauded, nor, on the trial, to prove an intent
on the part of the defendant to defraud any particular person ;
it is sufficient to allege and prove that the defendant did the
act charged with an intent to defraud.

Applying these principles to the case in hand, was there
evidence of acts and circumstances from which the jury could
infer that the false and forged alterations of the checks in
question were made with intent to defraud some person or
persons, and that there was at the time an apparent possi-
bility of fraud as a consequence of the acts complained of?

The evident effect of these forged alterations was to give an
entirely new operation to the checks in question, making
them a means of transfer of the funds of the estate not to its
creditors as intended, but to the pocket of the accused. That
such diversion of these funds created an apparent possibility
of fraud that did not exist before, I think must be admitted.
The effort of counsel to avert such a conclusion by his sug-
gestion that the funds upon which the checks were drawn
were in fact the joint and separate funds of the executors, and

that each owned the whole in law, fails because the principle of joint and several control by executors over the estate of a decedent does not apply after the estate has been converted into money and jointly deposited, as was the case here.

The doctrine is that there may be a contract between joint executors concerning the funds of the estate and their management, and that they may keep the funds so that both or all the executors exercise control and supervision thereof together, and that when this is the case any person dealing with them is bound to recognize their joint title. Thus, if they open a joint account with a banker, both must unite in a receipt or check in order to discharge him. *Schoul. Ex.* 401; *De Haven* v. *Williams,* 80 *Pa. St.* 480.

Here was the joint deposit and the contract as well, to the effect that no check should be valid without the signatures of both executors. It follows, therefore, that the accused had parted with all right or claim to the exclusive use or control of the funds so deposited, and that he had no more right than a stranger to thus transfer a part of these funds to himself by forged alterations of the checks with which he was entrusted.

With the money thus unlawfully diverted into the hands of the accused, there was nothing but his own volition to prevent an embezzlement or *devastavit* of the whole. That he chose to settle with the original payees of the checks at a less sum than their real claims, and to convert to his own use only a portion of the funds, does not alter the principle involved. It being in proof that the accused himself drew the checks to the order of these creditors of the estate, and then having obtained the signature of his co-executor thereto, on the same day made the forged alterations and drew the money thereon from the bank, and that he filed his sworn account as executor a few months later, in which he craved allowance for the full amounts of the checks as if paid to the creditors, there was certainly evidence from which the jury might reasonably find that the accused made the forged alterations in the checks with intent to defraud.

The suggestion that there was no attempt to conceal the erasure, that it was plain to anyone, is no defence in this case.    The alteration was at least successful in its object, and the rule of law in that particular is, that it is sufficient to constitute the crime if a signed writing, which is forged, be intended to be taken as true and might be so taken by ordinary persons.    3 *Greenl. Ev.* 105; 2 *Russ. Cr.* 348, 350, and cases cited.

Or as Mr. Justice Ford expressed it in *State* v. *Robinson,* 1 *Harr.* 507, 510, in speaking of an alteration : " Nice observers might detect the falsification by holding it up to the light, but that does not justify the forgery.    The law is to protect the mass of society, and it matters not if a few knowing men are safe."

It was further insisted for the plaintiff in error that when the checks came to his hands they bore the signature of his co-executor alone and were of no validity until signed by the other executor ; that the alterations occurred when the checks were in this invalid condition, and could not therefore constitute the crime of forgery.

Not admitting that such an instrument could not be the subject of forgery, it is plain that such invalidity, if it existed, could be no defence in this case.    For as a part of the same transaction, the plaintiff in error did, in fact, attach his signature to these checks and even if this act were done after the alterations, the plaintiff in error thereby sanctioned and adopted the forged alterations he had made and gave them their fraudulent operation and effect.    The checks thereby undoubtedly became forged.    The second counts in the indictments, charging the uttering of these forged instruments, were sustained by the act of the accused in drawing the money upon them at the bank.    I mean to say that these acts constitute forgeries and the uttering of forged paper, provided they were done with intent to defraud and the question of intent, having been properly submitted to the jury as before stated, the result is that there is no error in this part of the record.

My conclusion is, after a careful consideration of the whole case, that the judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DEPUE, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON. 13.

*For reversal*—None.