### H. W. BUNKER v. THE STATE.

No. 3518.   Decided May 12, 1915.

Rehearing denied June 2, 1915.

**1.—Forgery—Passing Forged Instrument—Character of Instrument.**

Where defendant gave his check to prosecuting witness and some months thereafter his promissory note, and when suit was instituted on said note, pleaded as a set-off said check, which after it had been paid he altered by so

changing the date that it appeared to have been made after the note had been given, said check formed the basis for forgery, and the contention that it could not be made the predicate for a charge of forgery was untenable.

### 2.—Same—Case Stated—Pecuniary Obligation.

Where the alteration of the date of the instrument upon which forgery was based made it such that, if true, it would have defeated a recovery on a certain note to the extent of said check, such instrument was a sufficient predicate upon which to base a prosecution for perjury.

### 3.—Same—Rule Stated—Forgery—Sufficiency of the Evidence.

In our State, under our statute, it has been held that ordinarily a fair test of whether an instrument is the subject of forgery is, would the holder of same, if the same were true, be enabled to maintain or defeat a civil suit by such instrument, and where the facts showed such a case, the conviction is sustained. Following Scott v. State, 40 Texas Crim. Rep., 105.

### 4.—Same—Rule Stated—Extrinsic Averments.

If an instrument is not void, but merely obscure or of doubtful implication, it may be made the subject of forgery, by innuendo averments showing what is meant by the doubtful terms or by such extrinsic averments as show it to be valid if genuine for the purpose intended. Following Forcy v. State, 60 Texas Crim. Rep., 206, and other cases.

### 5.—Same—Case Stated—Forgery—Character of Instrument.

Where the alterations and changes in the instrument upon which forgery was alleged was intended to give it a new life and a new use and was pleaded in bar of a recovery on a certain note, which, if true, it would have defeated to the extent of the amount named therein, the same was such an instrument upon which perjury could be based, and the indictment being sufficient and the court submitting a proper charge applicable to the facts, there was no error. Davidson, Judge, dissenting.

### 6.—Same—Indictment—Forgery—Passing Forged Instrument.

Where the indictment set out the facts which showed it to be a forged instrument and alleged the passing of said forged instrument, there was no error in overruling a motion to quash the indictment. Following Barnwell v. State, 1 Texas Crim. App., 745, and other cases.

### 7.—Same—Requested Charge.

Where, upon trial of passing a forged instrument, the evidence sustained the conviction, there was no error in refusing a requested charge to acquit the defendant.

### 8.—Same—Justice Court—Indictment.

Where, upon trial of passing a forged instrument, the indictment alleged that the defendant introduced in evidence the check upon which forgery was based as a set-off against the note upon a certain suit in the Justice Court, the contention that there is no such court known as the Justice Court, and that the indictment is, therefore, insufficient, is untenable.

### 9.—Same—Evidence—Innocent Agent—Principal—Attorney.

Article 77 of the Penal Code provides that if one causes an innocent agent to commit an offense, he becomes a principal, and the contention that the attorney of the defendant offered in evidence the alleged forged check in a civil suit in the Justice Court, and that, therefore, the attorney would be guilty of passing a forged instrument, and not the defendant, is untenable, in the absence of evidence that said attorney knew or even suspicioned that the check was forged when he offered it in evidence. Following Ellis v. State, 22 S. W. Rep., 678, and other cases.

### 10.—Same—Bank—Incorporation.

Where the indictment did not allege that the instrument upon which forgery was based was passed on a corporation, it was not necessary to prove the incorporation of the bank. Following Reeseman v. State, 59 Texas Crim. Rep., 430, and other cases.

### 11.—Same—Evidence—Loss of Check—Other Trial.

Where, upon trial of passing a forged instrument, the evidence showed that defendant introduced in evidence a certain check as a set-off against a suit upon a certain note in the Justice Court, the fact that such case had been tried, the result not being shown, would not present reversible error, and where the loss of said check and other papers in said justice suit was shown, secondary evidence of their contents was admissible.

### 12.—Same—Rule Stated—Secondary Evidence.

If the proof established a reasonable presumption of the loss of the instrument, it is held to be sufficient to admit secondary evidence of it, and the question whether or not a basis has been made to let in secondary evidence is a question that rests on the sound discretion of the trial judge. Following Mays v. Moore, 13 Texas, 85, and other cases.

### 13.—Same—Practice in District Court—Evidence.

Where the court opened the door rather wide in admitting evidence to show the loss of the alleged check and other papers, but it was shown that the defendant was contesting the admissibility of secondary evidence of the contents of the instrument, the broadness of the inquiry was due to such insistence, and the defendant will not be heard to complain.

### 14.—Same—Rule Stated—Secondary Evidence.

It has always been held that when a written instrument is shown to be in the possession of the defendant and he declines to produce it upon notice to do so, the secondary evidence of its contents is admissible.

### 15.—Same—Practice in District Court.

Upon trial of passing a forged instrument, there was no error in the court's refusal to instruct the officers of the court to turn the alleged check over to the defendant.

### 16.—Same—Bills of Exception—Presumption.

Where the alleged bills of exception are not in the record, it must be presumed that they were not approved by the trial judge.

### 17.—Same—Evidence—Payment of Check.

Upon trial of passing a forged instrument, there was no error in permitting the officers of the bank to show that the alleged check had been paid, and when the transaction had taken place.

### 18.—Same—Evidence—Bookkeeping.

When defendant questioned the accuracy of the loose-leaf-ledger system of bookkeeping, it was permissible for the State to show by the bank officers that it was a correct system and in general use.

### 19.—Same—Argument of Counsel.

Where, upon trial of passing a forged instrument, the remarks of State's counsel were partly corrected and partly legitimate and contained no reference to defendant's failure to testify, there was no reversible error.

### 20.—Same—Practice—Special Judge.

The fact that the court, upon trial of passing a forged instrument, permitted a special judge in another case to take the oath and enter an order in such case during the intermission in the trial of the instant case, presents no reversible error.

**21.—Same—Requested Charges.**

Where, upon trial of passing a forged instrument, the court's charge was full, explicit and properly presented the law of the case, it was not necessary to give the special charges requested. Davidson, Judge, dissenting.

Appeal from the District Court of Armstrong. Tried below before the Hon. Hugh L. Umphres.

Appeal from a conviction of passing a forged instrument; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*A. A. Lumpkin* and *F. J. Ford* and *W. A. Wilson,* for appellant.— On question that there is no such court known as the Justice Court and that the indictment was insufficient: Forcy v. State, 55 Texas Crim. Rep., 545, and cases cited in opinion.

On question that indictment is insufficient in that it charges forgery instead of passing a forged instrument: Reagan v. State, 28 Texas Crim. App., 227; Hineman v. State, 22 id., 44; Porter v. State, 48 Texas Crim. Rep., 125; Thweat v. State, 49 id., 617; Scales v. State, 46 id., 296; Wood v. State, 47 id., 543.

On question of attorney passing the check and consequent variance in pleading and proof: Lassiter v. State, 49 Texas Crim. Rep., 532; Huntly v. State, 34 S. W. Rep., 923; Riley v. State, 44 S. W. Rep., 498.

On question of incorporation of bank: Wisdom v. State, 49 Texas Crim. Rep., 534, 95 S. W. Rep., 505; McLaurine v. State, 28 Texas Crim. App., 530; Withers v. State, 21 id., 210.

On question of insufficient proof of check and variance: Feeney v. State, 58 Texas Crim. Rep., 152; Fischl v. State, 54 id., 55.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of sufficiency of indictment: Branch's Crim. Law, 379-380.

On question of incorporation of bank: Carter v. State, 55 Texas Crim. Rep., 43, and cases cited in opinion.

HARPER, JUDGE.—Appellant was convicted, under the fourth count in the indictment, charging passing a forged instrument.

One of the main contentions of appellant is that the instrument alleged can not be made the predicate for a charge of forgery, and owing to his insistence we will discuss the question at length and the authorities cited by him. The evidence would authorize a finding that appellant purchased from Mr. Bishop in March, 1912, several head of cattle, and on the 13th day of March, 1912, gave him a check for fifty dollars in payment of the cattle, the said check reading:

"Guaranty Fund Bank                    Claude, Texas, 3-13, 1912.
                    FIRST STATE BANK
Pay to the order of S. Bishop                              $50.00
    Fifty no/100 .....................................Dollars.
                              (Signed)        H. W. Bunker."

On the 22d day of March, 1912, the check being payable to the order
of S. Bishop, he indorsed on the back thereof his name, Stephen Bishop,
and presented it to the bank for payment on that day, and it was paid
on that date, as shown by the testimony of the officers of the bank, as
well as the testimony of Mr. Bishop, and the bank indorsed thereon
"Paid" with its stamp, used for that purpose.

In May, 1912, after the above transaction, Mr. Bishop had a public
sale of some property, and appellant became a purchaser of a portion
of the property, and on May 25, 1912, gave to Mr. Bishop his promis-
sory note for the sum of one hundred ninety and 80/100 dollars, due
six months after date, bearing interest at the rate of ten per cent, and
providing for attorney's fees in case of suit. It is thus seen that this
note was given two months after the check in payment for the cattle
had been given and paid.

All of this note not being paid, Mr. Bishop brought suit on the note
in 1914, and the case came on to be tried on the 5th day of October,
1914. The pleadings were oral in the Justice Court, and it is shown
that appellant, by his attorney, plead as an offset that he had paid Mr.
Bishop on the note $50 on March 13, 1914, and said he had paid it to
him at the depot in Washburn by check on the First State Bank, and
during the trial introduced as evidence in support of this plea a check
reading as follows:

"Guaranty State Bank                    Claude, Texas, 3-13, 1914.
                  FIRST STATE BANK
Pay to the order of S. Bishop                           $50.00
.............................Fifty no/100 ..............Dollars.
    This check is to be applied on auction note.
                    (Signed)        H. W. Bunker."

and which check, so introduced, had indorsed thereon the name of
Stephen Bishop, and was marked paid by the bank.

The contention of the State is that appellant had gotten the check,
from the bank, he had given Mr. Bishop in March, 1912, and had
altered it so as to make it read that he had given the check to Mr.
Bishop March 13, 1914, by changing the 2 to a 4, and placed therein,
"this check to be applied on auction note," which note had been given
two months after the check for the cattle had been given in March, 1912.
Appellant's contention is, that if this be true, it is not such an instru-
ment that forgery can be based thereon, nor would he be guilty of any
offense in passing same. Appellant's able attorneys have briefed the
question and present a number of authorities. The first case he refers
us to is the case of Reed v. State, 28 Ind., 396, in which it was held
that the certificate, so far as it purports to be an instrument entitling
Allen to the bounty named therein, was merely void—there was no law
authorizing the giving of bounties by county commissioners, and says:
"Void things are no things. . . . A writing void on its face is a
familiar instance of paper in respect to which forgery can not be pred-

icated without the averment of some extrinsic circumstances showing how it may become pernicious."

No one would question this statement of the law, but it has no application to this case. The instrument alleged in this case, if true, would not be void, but a valid receipt for fifty dollars on the amount due on the auction note, and extrinsic averments are stated in the instrument which would show that fact.

The next case we are referred to is the case of People v. Cady, 4 Hill (N. Y.), 490. It has no application to the character of case as made by the evidence in this case, nor the allegations contained in the indictment. The writ was in the nature of a writ of inquiry issued by the court, returnable on a given date. The attorney receiving it changed the return which would show it had not been served in time. It was held such act in no way affected property rights and was not an offense under the statute of New York. Nearly every State, if not every State, has laws defining forgery, and especially is this true in this State, where the law provides there shall be no penal offense except as prescribed in the Penal Code (art. 3, P. C.). Our Code provides: He is guilty of forgery who, without lawful authority, and with intent to injure and defraud, shall alter an instrument in writing then already in existence, by whomsoever made, in such manner that the alteration would, if legally made, have discharged or defeated any pecuniary obligation. The alterations herein alleged to have been made, certainly, if true, would have defeated a recovery on the note to the extent of $50.

We are also cited by appellant to the case of People v. Fitch, another New York case, reported in 19 Am. Dec., 478. In that case one man gave another an order for a cow, dated November 4. The date was changed to November 14—the *legal effect* of the order was in no way affected by the change nor the rights of the parties in any way affected thereby. The court, in passing on the case, however, holds:

"Is this forgery? Forgery has often been defined by learned jurists. By Mr. Justice Blackstone, 'forgery is the fraudulent making or alteration of a writing to the prejudice of another's right'; by Buller, justice, 'the making of a false instrument with intent to deceive'; by Baron Eyre, 'a false signature with intent to deceive.' Again: 'the false making an instrument which purports, on the face of it, to be good and valid for the purposes for which it was created, with a design to defraud'; by Grose, justice, 'the false making of a note or other instrument with intent to defraud'; by Mr. East, 'the false making of any written instrument for the purpose of fraud or deceit'; 2 East's P. C., 852, 853; by Mr. Chitty, 'the false making or alteration of such writings as either at common law, or by statute, are its objects, with intent to defraud another'; Chitty's Cr. L., 1022. This writer notices a distinction between forgery and fraud; that the latter must actually take effect, while the former is complete, though no one is actually injured if the tendency and intent to defraud be manifest. As to what false making is necessary to constitute the offense, it has been held that a party may make a false deed in his own name, by antedating, for in-

stance, so as to prejudice a prior grantee. So by indorsing a bill of exchange in his own name when he is not the real payee; 2 East's P. C., 855; 4 T. R., 28. On this principle we held Peacock guilty of forgery for indorsing the permit for the delivery of a quantity of coal, with his own name, knowing that he was not the real consignee of the coal, though of the same name. 6 Cow., 72. So making a fraudulent alteration or erasure in any material part of a true instrument, *or any alteration which gives it a new operation,* as by altering the date of a bill of exchange after acceptance, whereby the payment was accelerated. 4 T. R., 320; 3 Chitty's Cr. L., 1038; 2 East's P. C., 855."

That case, instead of being an authority in favor of the invalidity of the instrument here relied upon, holds that "making a fraudulent alteration or erasure in any material part of a true instrument, *or any alteration which gives it a new operation,*" is forgery. In this case by the alterations alleged, appellant gave it a new operation—a legal receipt, against a note that had not been executed when the original check was given.

The case of Clarke v. State, 8 Ohio, 630, also referred to by appellant, does not hold that the instrument was not one subject to forgery, but that extrinsic averments should have been made showing wherein it could be used to defraud. The appellant in that case was charged with altering a tax receipt showing he had paid $7 more in taxes than he had paid, with intent to injure and defraud Nathan Lupton; yet, as it was Nathan Lupton's receipt issued to him by the collector of taxes, before such alteration could be made the basis of forgery, it was held the indictment must contain averments showing in what way appellant could have injured or defrauded Lupton in altering the receipt issued to him, Lupton. The indictment in this case contains all such necessary averments.

In the Tennessee case referred to by appellant, State v. Corley, 4 Baxt., 410, it appears that Corley had been sued and judgment obtained against him, in which case King was entitled to a witness fee. Corley indorsed on the docket, "I retain King's witness as attorney." Held that without extrinsic averments such an entry could not be the basis of forgery. The judgment debtor merely asserting that he retained the witness under a claim of right.

We are also referred to a Kentucky case by appellant, Com. v. Butler, 37 S. W. Rep., 840, in which it was held that an indictment did not charge forgery wherein it was only alleged that he changed a receipt issued to him, from 60 cents to 90 cents to defraud J. P. Stephens of 30 cents. We take it from reading the opinion, it is only held that the necessary allegations were not contained in the indictment to base forgery on the instrument. If it is contended that the Kentucky court intended to hold that it was not such an instrument that forgery could be based thereon, the statute in that State must be different from our own statute, for in the case of Fonville v. State, 17 Texas Crim App, 368, this identical question was before this court, and Judge Hurt held that under the Penal Code of this State forgery could be predicated on

such a receipt so altered, and affirmed the judgment of the trial court sentencing Fonville to two years in the penitentiary.

The Minnesota case also referred to by appellant has no application to this case (State v. Mannier, 8 Minn., 212), it being simply held that the "indictment did not charge sufficient facts to constitute the crime of forgery"—not that forgery could not be based on the indictment alleged, if explanatory facts had been alleged.

These are all the cases cited us by appellant and none of them sustain his contention, that the alterations alleged could not and would not form the basis for forgery, where the indictment contains the necessary explanatory averments to show that if the instrument was a true instrument it would in fact have diminished a pecuniary obligation, and defeated a recovery on the note to the extent of fifty dollars. On the other hand, we think all the authorities hold, under a statute like ours, that forgery can be based upon such an instrument. Mr. Bouvier, in his Law Dictionary, defines forgery as "The fraudulent making or alteration of a writing to the prejudice of another's right; the endeavor to give an appearance of truth to a mere deceit and falsity; any fraudulent alteration, *whereby a new operation is given to an instrument,* constitutes forgery," citing 2 Russell on Crimes, sec. 319.

The Standard Enc. of Prac., Title Forgery, says: "A definition frequently quoted defines forgery as 'the fraudulent making or altering of any writing to the prejudice of another's rights.' A more satisfactory definition, however, and one that has met the approval of many courts, is the following: 'At common law, forgery is the false making or material altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.' "

In Words & Phrases, vol. 3, we find the following definitions and citation of authorities:

"Forgery is the false making of a paper. But it need not be the entire fabrication thereof. Any addition to a genuine paper, or any alteration of it in an essential particular, so as to give it a different meaning, is a forgery. United States v. Osgood (U. S.), 27 Fed. Cas., 362, 363.

"It is forgery to fraudulently alter any part of an instrument when the alteration is capable of working injury to another. Thus it is forgery to alter the dates, names, or any other material parts of an instrument when the alteration gives it a new operation. It is no defense to a forgery committed by alterations in an instrument that there was no special attempt to conceal such alterations, and that they were plain to be seen; the rule being that if a signed writing, which is forged, be intended to be taken as true, and might be so taken by ordinary persons, it is sufficient. Rohr v. State, 38 Atl., 673, 674, 60 N. J. Law, 576; Commonwealth v. Hide, 23 S. W., 195, 196, 94 Ky., 517; Murphy v. State, 23 South., 719, 118 Ala., 137.

"Forgery may consist in making and issuing, with fraudulent intent, etc., a paper or writing, false or forged, either in its entirety or in

some significant or important portion or part of it. Thus the changing of the figure '1' to '5,' so as to make the number '107' read '507,' is sufficient to constitute forgery. State v. Wingard, 5 South., 54, 55, 40 La. Ann., 733.

"Forgery is the false making of an instrument. The illegal making may be an original fabrication, or it may be by merely changing a thing already made into another thing. Hence, though every forgery does not include every altering, yet every altering includes a forgery. In either case there must be a thing—an instrument—known to the law, and to which it gives legal effect when the act is completed. If the prisoner alter a note, it must still be a note or some other legal instrument. Haynes v. State, 15 Ohio St., 455, 457.

"2 Rev. St., p. 673, enacts that every person who, with intent to injure or defraud, shall falsely make, alter, forge, or counterfeit any instrument or writing being or purporting to be the act of another by which any pecuniary demand or obligation shall be or purport to be created, increased, discharged, or diminished, or by which any rights shall be or purport to be transferred, conveyed, discharged, or diminished, shall be guilty of forgery. Held, that forgery may be committed under the statute either by the entire false making of an instrument or by making a material alteration or insertion in or addition to the true instrument, although but in a letter or figure, or by misapplying a genuine signature; as, by writing over it an instrument for which it was never intended. People v. Graham (N. Y.), 6 Parker, C. R., 135, 139.

"The holder of certain county warrants brought suit thereon, and recovered judgment against the county, filing the warrants with the justice. The warrants were indorsed payable specially to such holder or order, and when judgment was recovered the agent of the holder wrote across the face the word 'Judgment,' with the date thereof. The defendant obtained possession of such warrants, erased such indorsement and writing across the face, and then negotiated and sold the warrants, and was indicted for having forged the same. It was assigned as error that the offense charged was not 'forgery,' but rather the obtaining money by false pretense or token. Forgery, as defined in the Code, 'is the fraudulent making or altering of any writing to the prejudice of another's rights.' This is the common law definition of the offense, and would cover any form of the crime recognized by that law which treated forgery as a common law cheat, or attempt to cheat. Any alteration of a written instrument whereby its legal effect is varied will constitute the offense, and the indictment may, in such case, regard the offense as a forgery of the entire instrument, for in law it is such. And the erasure of the indorsement on the back of the warrants constituted forgery of the warrants. Garner v. State, 73 Tenn. (5 Lea), 213, 217, 218."

In our own State, under our statute, it has been held that ordinarily a fair test of whether an instrument is the subject of forgery is, would the holder of same, if the same were true, be enabled to maintain or

*defeat a civil* suit by such instrument. (Scott ys. State, 40 Texas Crim. Rep., 105; Daud v. State, 34 Texas Crim. Rep., 460; Gray v. State, 44 Texas Crim. Rep., 477.)   Not only could the instrument relied on in this case as the basis for forgery be used to defeat a civil suit if true, yet the facts show that the appellant did use it for that specific purpose.

Again, this court has held, "if an instrument is not void but merely obscure or of doubtful interpretation, it may be made the subject of forgery by innuendo averments showing what is meant by the doubtful terms, or by such extrinsic averments as show it to be valid if genuine for the purpose intended."   Forcy v. State, 60 Texas. Crim. Rep., 206, 131 S. W. Rep., 585; Allen v. State, 44 Texas Crim. Rep., 63; Scott v. State, 40 Texas Crim. Rep., 105; Head v. State, 72 S. W. Rep., 394; Davis v. State, 69 S. W. Rep., 73, and cases cited.

We have examined the authorities not only in this State, but other States, and are of the opinion that by the alterations and changes in the instrument, it was intended to give it a new life and a new use, and if true, it could be, as it was, plead in bar of a recovery on the auction note, and if true, it would have defeated a recovery on said note to the extent of fifty dollars, the alteration having been made after Mr. Bishop had indorsed it; and it was intended by such alterations and changes to make, by virtue of Bishop's signature, a valid receipt for fifty dollars, and if true it would in law be a valid receipt for said sum.

The court, in submitting the fourth count in the indictment, charged the jury:

"If you find and believe from the evidence beyond a reasonable doubt that a check in writing as set out in the fourth count of the indictment was forged and that the defendant in the County of Armstrong and State of Texas on or about the 5th day of October, 1914, as alleged, knowing the said check to be a forged instrument, if it was a forged instrument, and if accused knew it to be forged, in the manner and under the circumstances set forth in said fourth count of said indictment, did without lawful authority and with intent to injure and defraud said Stephen Bishop, fraudulently and knowingly pass and introduce the said check so altered, if it was altered, as true and as evidence in behalf of accused in and to the Justice Court of precinct No. 2 of Armstrong County, Texas, in the case of Stephen Bishop v. H. W. Bunker, No. 346, in order to receive a credit of fifty dollars in the manner and under the circumstances set forth and alleged in said fourth count of the indictment, then you will find the defendant guilty and assess his punishment at confinement in the penitentiary for any term of years not less than two nor more than five years."

Appellant also insisted the indictment charged appellant with both forging and passing a forged instrument.   In the third count appellant was charged with forging the instrument, and the jury was so instructed, and it was the intention of the pleader to charge only a passing of the instrument in the fourth count, and the court so instructed the jury

as hereinbefore shown. If there are in the count allegations that appellant forged the instrument as well as passed it, such allegations could be held as surplusage and be eliminated, and the indictment still charge a passing of a forged instrument. The pleader was merely setting forth the facts which showed it to be a forged instrument that was alleged to have been passed, and under the fourth count appellant could not have been tried for forgery, but only for passing the instrument. The indictment is valid, and the court did not err in overruling the motion to quash it. Barnwell v. State, 1 Texas Crim. App., 745; Boles v. State, 13 Texas Crim. App., 650; Miller v. State, 16 Texas Crim. App., 417; Reagan v. State, 28 Texas Crim. App., 227; Mason v. State, 29 Texas Crim. App., 24; Crawford v. State, 31 Texas Crim. Rep., 51; Dill v. State, 35 Texas Crim. Rep., 240; Carr v. State, 36 Texas Crim. Rep., 3; Wadkins v. State, 58 Texas Crim. Rep., 110.

The next assignment in appellant's brief is that the court erred in not giving peremptory instructions. As the evidence for the State would support the verdict there was no error in refusing such instructions.

The indictment charged that "then and there in open session, in and during the trial of a civil case then pending in said Justice Court, styled: 'Stephen Bishop v. H. W. Bunker, number 346,' in which said suit and trial thereof the said Stephen Bishop, as plaintiff, had sued and was suing the said H. W. Bunker, as defendant, for a balance of about $77 then due and past due and unpaid as principal, interest and attorney's fees, upon the said note hereinbefore described; and when the said H. W. Bunker so passed and introduced the said check as true as aforesaid, to the said Justice Court as aforesaid, he, the said H. W. Bunker, did then and there wilfully and fraudulently and knowingly intend that the said check should purport and appear to be and should be admitted in evidence in said trial of the said case in favor of himself and against the said Stephen Bishop, as evidence of the payment by the said H. W. Bunker to the said Stephen Bishop of the sum of $50 as a part of and upon the said note and as evidence of the receipt by the said Stephen Bishop from the said H. W. Bunker of the said sum of $50 as a part payment of and upon the said note, and in fact the said check was so admitted and received in evidence in said trial of said case in said Justice Court for the said purposes; when the said alleged, and the said H. W. Bunker then and there well knew same was check was false and forged by alteration in the particular hereinbefore false and forged as hereinbefore alleged when he so passed and introduced the same as evidence as aforesaid; and in so altering and passing the said check, as aforesaid, the said H. W. Bunker did then and there and thereby wilfully and fraudulently intend that the said check, so made, indorsed, stamped and altered as aforesaid, should diminish, discharge and defeat the pecuniary obligation of the said H. W. Bunker which existed by reason of the execution and delivery of the said note to the amount of $50, and the said alteration and passing of the said check was done and made in such manner as that the said check, so altered as aforesaid (if the said alteration had been legally made),

would have diminished, discharged and defeated the pecuniary obligation of the said H. W. Bunker which existed and was created by reason of the execution and delivery of the said note as aforesaid, to the amount of $50." The contention first made is that there is no such court known as the "Justice Court." The court held by the justice of the peace under authority of the Constitution and laws of this State is known and generally called the "Justice Court." No other court is so called, and it was a sufficient designation of the court. It is also contended that the evidence shows that appellant handed the check to his attorney and he, the attorney, offered it in evidence, and it would be the attorney passing it, if anyone was guilty. Article 77 of the Penal Code provides that if one cause an innocent agent to commit an offense he becomes the principal. There is no evidence that the attorney knew or even suspicioned the check was forged when he offered it in evidence, while the evidence amply shows that appellant knew that fact when he handed it to his attorney; that appellant took the stand and testified to the genuineness of the check, and that he had given it to Mr. Bishop in 1914, at the depot. It was the act of appellant and not the attorney. Ellis v. State, 22 S. W. Rep., 678. It is also contended that as the indictment charged that the First State Bank was incorporated it was necessary to prove that allegation. This court has held adversely to appellant's contention. White v. State, 135 S. W. Rep., 563. The indictment did not allege that the instrument was passed on the corporation, but on another. Reeseman v. State, 59 Texas Crim. Rep., 430, and cases cited in Davis v. State, 70 Texas Crim. Rep., 253, 156 S. W. Rep., 1171.

The only assignment in the brief is that the court erred in admitting evidence of the loss of the check and other papers, and evidence that defendant had been tried in another case. Appellant in his brief did not further specify, but this we suppose would call in review the various bills of exceptions. Under the circumstances, the fact that appellant had been tried in another case (the result not being shown) was admitted in evidence, would not present error. The record shows that at the close of the former trial the State requested the court to send out with the jury the check, note and other Justice Court papers. Appellant opposed this being done, and his objection was sustained. The judge then took all the Justice Court papers, including the note and check on his desk. Upon announcement for trial in this case, the papers could not be found. Appellant objected to secondary evidence of the contents of the note and check, and it then became incumbent upon the State to show the location of the papers the last time they were seen, the search made for said papers, and the loss of the papers to render secondary evidence of the contents admissible, and when it had shown this, then secondary evidence of the contents of the papers became admissible, and the court did not err in so holding. In Haun v. State, 13 Texas Crim. App., 383, in which the court was discussing

the loss of the note in a forgery case, Judge Willson, speaking for the court, held:

"In treating upon this subject Mr. Greenleaf says: 'If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose, and that a bona fide and diligent search has been unsuccessfully made for it in the place where it was most likely to be found, if the nature of the case admits such proof. . . . What degree of diligence in the search is necessary is not easy to define, as each case depends much on its peculiar circumstances. . . . But it seems that in general the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him.' (1 Greenl. Ev., sec. 558.) If the proof establishes a reasonable presumption of the loss of the instrument, it is held to be sufficient to admit secondary evidence of it. (Cheatham v. Riddle, 8 Texas, 162.) And the question as to whether or not a basis has been made to let in secondary evidence is a question addressed to the discretion of the trial judge, which the court will not revise, except in a case of manifest error. (Mays v. Moore, 13 Texas, 85.)" It was under such circumstances the fact that appellant had been tried in another case was elicited, and under the rule requiring that the lost paper be traced to its last custodian, the evidence to show the character of search made therefor, that it could not be found, and all evidence tending to show those facts became admissible. The disposition of it, if known, may also be shown. The court opened the door rather wide in admitting evidence to show the loss of those papers, but, as appellant was contesting the admissibility of secondary evidence of the contents of the instruments, his objections being that the evidence as given was insufficient to permit secondary evidence, the broadness of the inquiry was due to such insistence, and he will not now be heard to complain. All the evidence admitted went to show that the clerk was keeping the papers; had delivered them to the judge, when the question of whether the jury in the former case would be permitted to take them with them, was being discussed the disposition made of the papers by the judge, their loss and the effort and search made for them, and the probable disposition of the papers, placing them beyond the reach of the court— in fact, in possession of the defendant. It has always been held that when a written instrument is shown to be in possession of a defendant, if he declines to produce it upon notice to do so, then secondary evidence of its contents is admissible. This disposes of appellant's bills of exceptions Nos. 3, 4, 5, 8, 9, 11, 14, 15, 16, 18, and 19, as they all relate to the introduction of the secondary evidence of the contents of the check and note, and proof of the loss and search made for such papers.

His first bill of exceptions relates solely to the question that the instrument upon which the charge of forgery is predicated is not such an instrument upon which forgery can be charged. We have already discussed this question. In the second bill, it is shown that at the

beginning of the trial, appellant presented a written motion requesting the court to instruct the officers to return to him the check in question, alleging that it was his property. As appellant had introduced the check in evidence in the Justice Court, filed it with the papers in that cause, and the District Court had obtained possession of it from the justice of the peace by a subpoena duces tecum, there was no error in the court refusing to instruct the officers to return the check. Legal possession had been obtained of it, and the court had the right to hold it until the case was disposed of.

Bills 6, 7, 12, 13, 20, 21, 24, and 25 are not in the record and we must presume they were not approved.

It was permissible to be shown by the officers of the bank that a check for $50 from appellant to Stephen Bishop had been paid, when the memorandum was introduced so showing, on March 22, 1912, and also permissible to show that no such transaction had taken place at any time from March 13, 1914, to March 22, 1914, inclusive, and bill No. 16 presents no error. When appellant questioned the accuracy of the "loose leaf ledger system" of bookkeeping it was permissible for the State to show by the bank officers that it was a correct system and in general use; and bill No. 17 presents no error. This disposes of all the bills relating to the introduction of testimony. In bills Nos. 22, 23, and 26 appellant complains of the remarks of the prosecuting officers. In the first bill it is shown that the district attorney had said that the appellant had committed "perjury" in the Justice Court. When the remark was objected to, it was withdrawn, and the district attorney stated to the jury he meant forgery. The other remarks were legitimate, and were not even an indirect reference to defendant's failure to testify.

The fact that the court permitted a special judge in another case to take the oath and enter an order in such case during an intermission in the trial of this case presents no error.

We have carefully reviewed the exceptions to the charge of the court as given, and such exceptions present no error. The court's charge was full, explicit, and properly presented the law of the case as applicable to passing a forged instrument, and under such circumstances it was not necessary to give either of the special charges requested.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—There are several reversible errors in the record.

[Rehearing denied June 2, 1915.—Reporter.]