## RUBEN LUNA RIVAS V. STATE

No. 32,169. June 22, 1960

*Garcia & Warburton* by *O. B. Garcia*, Brownsville, for appellant.

*F. T. Graham*, Criminal District (County) Attorney, by *Joe W. Walsh*, Assistant Criminal District (County) Attorney, Brownsville, and *Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge

626

The offense is attempting to pass as true a forged instrument; the punishment, two years.

Appellant's confession, the voluntary nature of which is not questioned, recites in part as follows:

"During the morning of October 15, 1959, I went downtown and went to Baum's Menwear Shop and tried on a suit and pair of shoes. The salesman that waited on me stated that his name was Joe Davila. I left the suit to be altered and told Davila that I was going to talk with Jesus Chavez because Chavez was going to loan me some money. Also during the conversation I mentioned that I was looking for some wedding rings and Davila told me he knew where I could buy the rings and then he took me to Anderson Jeweler's. At Anderson's Jeweler's Mr. Anderson showed me some rings and I told Mr. Anderson that I would return later and let him know if I wanted to buy a certain set of rings. I then went back to the Plaza Hotel and went to my room and slept.

"I watched television for a little while and then went up to my room and wrote out two checks on the First National Bank of Harlingen, Texas, and I signed Jesus Chavez's signature to the checks. I made the checks out to myself, one for eight-hundred ($800.00) dollars and the other for five-hundred ($500.00) dollars and then I endorsed both checks. I then placed each check in a separate envelope and on the envelope that contained the $800.00 dollar check I wrote Anderson's Jewlers and on the other Baum's manshop. I went downstairs and gave both checks to a cab driver to take the checks to the places written on the envelopes and bring back the merchandise. The cab driver left and then I left also and went to the west side and just walked around * * * ."

Joe Davila testified concerning appellant's visit to the store where he was employed and of their trip to Mr. Anderson's jewelry store. He further stated that during the afternoon a taxi driver, Walter Finch, arrived at the store, handed him an envelope which contained a $500 check, and that he accompanied Finch to Anderson's store, where he delivered to Anderson the envelope containing the $800 check which constitutes the basis for this prosecution.

Anderson recounted appellant's and Davila's visit to his store in the morning, told of appellant selecting an "engagement and

wedding set" of rings and a man's watch of the total value of $590, said that appellant asked him to hold the jewelry, stating that "he was going to get a check from * * * Jesus Chavez * * * and he would come in and pay for it *or send for it.*" He stated that later in the day Davila and the taxi driver came to his store with the check, that he took it to the bank "to see if the check was all right" and they refused to honor the check and marked the same "unable to locate account."

Finch testified that appellant approached him at the taxi stand, handed him two sealed envelopes marked "Baum's Men's Wear" and "Anderson Jewelry," told him to go to the stores, pick up the merchandise, and bring it to the Plaza Hotel where the clerk on duty would pay him his taxi fare. He stated further that after Anderson returned from the bank the police were notified and appellant was arrested.

Jesus Chavez testified that appellant was his wife's nephew but that he had not authorized him to make the check in question and had not spoken to him on the day in question and that he did not know of anyone named Jesus Chavez except his son who was a schoolboy.

Appellant did not testify in his own behalf but introduced a portion of his confession not offered by the state to the effect that on the day in question he made a telephone call to Jesus Chavez, that a man answered, that he told the man he wanted to borrow some money, that he had made two checks and he was told that it was all right. He further called his mother as a witness and she testified that appellant had been very nervous and acted strangely since the war.

The state, in rebuttal, called the jailer, who testified that he had observed appellant daily since he had been in jail and that he had observed nothing abnormal about him.

The issue of insanity was submitted to the jury and decided adversely to appellant.

We shall now discuss the contentions advanced in appellant's brief.

Appellant moved to quash the indictment because the check set forth therein was dated "October 15, 1959." In Anderson v. State, 146 Tex. Cr. Rep. 175, 172 S.W. 2d 339, this court held

that a check dated similarly to the one before us here created a pecuniary obligation and would have done so even though it had borne no date at all. See also Daily v. State, 135 Tex. Cr. Rep. 655, 122 S.W. 2d 628; Simon v. State, 99 Tex. Cr. Rep 286, 269 S.W. 95; and Boles v. State, 13 Tex. App. 650.

It is next contended that the court erred in failing to submit to the jury in his charge the question of whether the witnesses Finch and Davila were accomplices. The court was clearly correct in this respect, as no issue was raised by this record as to their being accomplices. In the cases upon which appellant relies the evidence raised such an issue, and they are therefore not here controlling.

Further objection to the charge was made because the court failed to submit to the jury the issue as to whether Finch and Davila were agents of appellant. His contention is that *appellant, not being present at the time the check was passed to Anderson, could not be guilty as a principal unless Finch and Davila were innocent agents.* With appellant's statement of the law, we are in agreement. See II Branch's Ann. P.C., 2nd Ed., Section 711, page 9, and cases there cited. However, as stated in the preceding paragraph, there is no evidence which raised the issue which appellant sought to have the court submit to the jury. All the evidence shows them to have been innocent agents, and the court properly submitted the issue of his guilt to the jury under a charge which required them to find that he attempted to pass the check in question. Bunker v. State, 177 S.W. 108. See also Spivey v. State, 144 Tex. Cr. Rep. 432, 164 S.W. 2d 668, wherein this court quoted Branch as follows: "In a legal sense, defendant was present when the act was done if he fraudulently caused that act to be done by an innocent agent although in fact he was in a different county or state," and the cases there cited.

Appellant challenges the sufficiency of the evidence to support the verdict in this respect: The check was signed Jesue Chavez whereas the witness (appellant's relative )testified that his name was Jesus Chavez. It should be noted that such witness testified further that he had lived in Harlingen for 50 years and knew of no other person in his vicinity by the name of Jesue or Jesus Chavez other than his minor son.

He further contends that, since the indictment set forth the endorsement on the back of the check, it became incumbent upon the state to also prove such endorsement to be false. We find no

merit in this contention. The instrument which was attempted to be passed contained the endorsement and was a forgery.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.